## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA
## PITTSBURGH DIVISION

| | |
|---|---|
| **CHAD KAPOLKA AND BRETT TURRENTINE, Individually and on behalf of all Others Similarly Situated,** §§§§§ | Civil Action No. _2:18-cv-1007_ |
| **Plaintiffs,** | **JURY TRIAL DEMANDED** |
| **vs.** | **CLASS/COLLECTIVE ACTION SERVICES, LLC PURSUANT TO 29 U.S.C. § 216(b) FED. R. CIV. P. 23** |
| **ANCHOR DRILLING FLUIDS, USA, LLC and Q'MAX AMERICA INC.,** | |
| **Defendants** | |

### PLAINTIFFS' CLASS AND COLLECTIVE ACTION COMPLAINT

#### SUMMARY

1.      Plaintiffs Chad Kapolka and Brett Turrentine bring this lawsuit to recover for retaliation, unpaid overtime wages, and other damages under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"); the Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. Stat. Ann. § 333.104; as well as the Ohio Minimum Fair Wage Standards Act, O.R.C. §§4111 *et seq.*, ("the Ohio Wage Act"), and the Ohio Prompt Pay Act ("OPPA"), Ohio Rev. Code §4113.15 (collectively, "the Ohio wage laws") against Defendants Anchor Drilling Fluids, USA LLC and Q'Max America, Inc. (collectively, "Anchor" or "Defendants").

2.      Defendants employ Solids Control Operators to operate and maintain solids control equipment such as centrifuges, shakers, filtration systems and de-watering units.

3.      Defendants treat some of its Solids Control Operators as independent contractors or consultants.

4.      Defendants pay their Solids Control Operators performing services as independent

contractors or consultants like Plaintiffs a set amount per day, regardless of the number of hours worked

5.      Defendants require their Solids Control Operators performing services as independent contractors or consultants to work substantial overtime without overtime compensation.

6.      Plaintiffs and all other similarly situated Solids Control Operators performing services as independent contractors or consultants worked at least 12 hours a day and 84 hours or more hours a week.

7.      Regardless of the number of hours worked each week, Plaintiffs and all other similarly situated Solids Control Operators performing services as independent contractors or consultants never received overtime pay for work performed in excess of 40 hours in a week.

8.      This class and collective action alleges that Defendants misclassified Plaintiffs and all other similarly situated Solids Control Operators performing services as independent contractors or consultants as independent contractors to evade the overtime requirements of the FLSA, PMWA and the Ohio wage laws.

## JURISDICTION AND VENUE

9.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

10.     The Court has federal jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. §1332(d). The Court also has supplemental jurisdiction over any state law sub-class pursuant to 28 U.S.C. §1367.

11.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claim occurred in this District and Division.

**THE PARTIES**

12.     Plaintiff Chad Kapolka worked exclusively for Defendants as a Solids Control Operator. Throughout his employment with Defendants, he was paid a day-rate with no overtime compensation and was classified as an independent contractor. Kapolka's written consent has been attached as Ex. A.

13.     Plaintiff Brett Turrentine worked exclusively for Defendants as a Solids Control Operator. Throughout his employment with Defendants, he was paid a day-rate with no overtime compensation and was classified as an independent contractor. Turrentine's written consent has been attached as Ex. B.

14.     Plaintiffs bring this action on behalf of themselves and all other similarly situated Solids Control Operators who were classified as independent contractors and paid by Anchor's day-rate system.  Defendants paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in accordance with the FLSA, Ohio Wage Acts, and PMWA.

15.     The class of similarly situated employees or putative class members sought to be certified is defined as follows:

> **ALL CURRENT AND FORMER SOLIDS CONTROL OPERATORS WHO WERE CLASSIFIED AS INDEPENDENT CONTRACTORS AND PAID A DAY-RATE DURING THE LAST THREE (3) YEARS. (**"Putative Class Members")

16.     Kapolka also seeks class certification of such a class under FED. R. CIV. P. 23 under the PMWA.

17.     Turrentine also seeks class certification of such a class under FED. R. CIV. P. 23 under the Ohio Wage Acts.

18.     Anchor may be served with process at **Corporation Service Company, 2595**

Interstate Drive, Suite 103, Harrisburg, Pa. 17110.

19.     Q'Max may be served with process at **Corporation Service Company, 1700 Katy Freeway, Suite 200, Houston, TX 77079**.

COVERAGE UNDER THE FLSA

20.     At all times hereinafter mentioned, Defendants have been employers within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

21.     At all times hereinafter mentioned, Defendants have been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

22.     At all times hereinafter mentioned, Defendants have been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as tools, cell phones, and personal protective equipment - that have been moved in or produced for commerce by any person and in that Defendants have had and have an annual gross volume of sales made or business done of not less than $1,000,000 (exclusive of excise taxes at the retail level which are separately stated).

23.     At all times hereinafter mentioned, Plaintiffs and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

24.     As will be shown through this litigation, Defendants treated Plaintiffs (and indeed all of its workers that it classified as independent contractors and paid a daily rate to without overtime compensation) as employees and uniformly dictated the pay practices of Plaintiffs' and its other workers including its so-called "independent contractors".

25.     Defendants misclassification of Plaintiffs as independent contractors does not alter their status as employees for purposes of the FLSA, Ohio Wage Acts, or the PMWA.

### FACTS

26.     Defendants are an oil and natural gas service company operating throughout the United States, including Ohio and Pennsylvania. To complete their business objectives, Defendants hire personnel to perform solids control services.

27.     Many of these individuals worked for Defendants on a day-rate basis, were misclassified as independent contractors, and make up the proposed Putative Class. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

28.     Defendant classified all its Solids Control Operators as independent contractors and paid them a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek) and failed to provide them with overtime pay for hours that they worked in excess of forty (40) hours in a workweek.

29.     As Solids Control Operators, Plaintiffs' primary job duties included operating oilfield equipment such as shakers and centrifuges, rigging up and rigging down equipment, coordinating and separating drilling fluids and solids within defined specifications and recycling mud products. Plaintiffs worked in excess of 40 hours each week while employed by Defendants, often for weeks at time.

30.     The work Plaintiffs performed was an essential and integral part of Defendants' core business.

31.     During Plaintiffs' employment with Defendants while they were classified as an independent contractor, Defendants exercised control over all aspects of their job.

32.     Defendants did not require any substantial investment by Plaintiffs for them to perform the work required of them.

33.     Defendants determined Plaintiffs' opportunity for profit and loss.  Plaintiffs were not required to possess any unique or specialized skillset (other than that maintained by all other employees in their respective position) to perform their job duties.

34.     Defendants and its clients controlled all the significant or meaningful aspects of the job duties performed by Plaintiffs.

35.     Defendants and its clients determined the hours and locations Plaintiffs worked, tools used, and rates of pay received.

36.     Even though Plaintiffs often worked away from Defendants' offices without the presence of a direct supervisor employed by Defendants, Defendants still controlled all aspects of Plaintiffs' job activities by enforcing mandatory compliance with Defendants' and its client's policies and procedures.

37.     No real investment was required of Plaintiffs to perform their jobs.

38.     More often than not, Plaintiffs utilized equipment provided by Defendants and/or its clients to perform their job duties.  Plaintiffs did not provide the equipment they worked with on a daily basis.

39.     Defendants and/or its clients made the large capital investments in buildings, machines, equipment, tools, and supplied in the business in which Plaintiffs worked.

40.     Plaintiffs did not incur operating expenses like rent, payroll, marketing, and insurance.

41.     Plaintiffs were economically dependent on Defendants during their employment.

42.     Defendants set Plaintiffs' rates of pay, their work schedules, and prohibited them from working other jobs for other companies while they were working on jobs for Defendants.

43.     Defendants directly determined Plaintiffs' opportunity for profit and loss.  Plaintiffs' earning opportunities were based on the number of days Defendants scheduled them to work.

44.     Very little skill, training, or initiative was required of Plaintiffs to perform their job duties. Indeed, the daily and weekly activities of the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by Defendants and/or its clients. Virtually every job function was pre-determined by Defendants and/or its clients, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties. The Putative Class Members were prohibited from varying their job duties outside of the pre-determined parameters.

45.     Moreover, the job functions of the Putative Class Members were primarily manual labor/technical in nature, requiring little to no official training, much less a college education or other advanced degree.

46.     The Putative Class Members did not have any supervisory or management duties.

47.     Plaintiffs were not employed by Defendants on a project-by-project basis.  In fact, while Plaintiffs were classified as independent contractors, they were regularly on call for Defendants and/or its clients and were expected to drop everything and work whenever needed.

48.     All of the Putative Class Members perform the same or similar job duties and are subjected to the same or similar policies and procedures which dictate the day-to-day activities performed by each person.

49.     The Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay practice.

50.     Defendants' policy of failing to pay their independent contractors, including Plaintiffs, overtime violates the FLSA, Ohio Wage Acts, and PMWA because these workers are, for all purposes, employees performing non-exempt job duties.

51.     It is undisputed that the contractors are operating oilfield machinery, performing manual labor, and working long hours out in the field.

52.     Because Plaintiffs (and Defendants' other independent contractors) were misclassified as independent contractors by Defendants, they should receive overtime for all hours that they worked in excess of 40 hours in each workweek.

53.     Defendants day-rate system violates the FLSA, Ohio Wage Acts, and PMWA because Plaintiffs and those similarly situated did not receive any overtime pay for hours worked over 40 hours each week.

## FLSA VIOLATIONS

54.     As set forth herein, Defendants have violated, and are violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such employees for their employment in excess of forty (40) hours per week at rates no less than 1 and ½ times the regular rates for which they were employed.

55.     Defendants knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Putative Class Members overtime compensation. Defendants failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

56.     Accordingly, Plaintiffs and all those who are similarly situated are entitled to overtime wages under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorney's fees and costs.

## PMWA VIOLATIONS

57.     Kapolka brings this claim under the PMWA as a Rule 23 class action.

58.     The conduct alleged violates the PMWA (43 Pa. Stat. Ann. § 333.104).

59.     At all relevant times, Defendants were subject to the requirements of the PMWA.

60.    At all relevant times, Defendants employed Kapolka and those individuals with Pennsylvania state law claims as an "employees" within the meaning of the PMWA.

61.    The PMWA requires employers like Defendants to pay employees at one and one-half (1.5) times the regular rate of pay for hours worked in excess of forty (40) hours in any one week. Kapolka and each member of the Pennsylvania Class are entitled to overtime pay under the PMWA.

62.    Defendants have and had a policy and practice of misclassifying Kapolka and each member of the Pennsylvania class as independent contractors and failing to pay these workers overtime for hours worked in excess of 40 hours per workweek.

63.    Kapolka and each member of the Pennsylvania Class seek unpaid overtime in amount equal to 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

64.    Kapolka and each member of the Pennsylvania Class also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by Defendants, as provided by the PMWA.

## OHIO WAGE ACT VIOLATIONS

65.    Turrentine brings this claim under the Ohio Wage Act as a Rule 23 class action.

66.    The conduct alleged violates the Ohio Wage Act (O.R.C. §§4111).

67.    At all relevant times, Defendants were and are subject to the requirements of the Ohio Wage Act.

68.    At all relevant times, Defendants employed Turrentine and each Class Member with Ohio state law claims as an "employee" within the meaning of the Ohio Wage Act.

69.    The Ohio Wage Act requires employers like Defendants to pay employees at one and one-half (1.5) times the regular rate of pay for hours worked in excess of forty (40) hours in any one

week. Turrentine and each member of the Ohio Wage Act Class are entitled to overtime pay under the Ohio Wage Acts.

70.     Defendants had a policy and practice of misclassifying Turrentine and each member of the Ohio Wage Act class as independent contractors and failing to pay these workers overtime for hours worked in excess of 40 hours per workweek.

71.     Turrentine and each member of the Ohio Wage Act Class seek unpaid overtime in amount equal to 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

72.     Turrentine and each member of the Ohio Wage Act Class also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by Defendants, as provided by the Ohio Wage Act.

### CLASS AND COLLECTIVE ACTION ALLEGATIONS

73.     Plaintiffs incorporate all previous paragraphs and alleges that the illegal pay practices Defendants imposed on Plaintiffs were likewise imposed on the Putative Class Members.

74.     Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA, Ohio Wage Acts, and PMWA.

75.     Numerous other individuals who worked with Plaintiffs indicated they were improperly classified as independent contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

76.     Based on their experiences and tenure with Defendants, Plaintiffs are aware that Defendants' illegal practices were imposed on the Putative Class Members.

77.     The Putative Class Members were all improperly classified as independent contractors and not afforded the overtime compensation when they worked in excess of forty (40) hours per week.

78.     Defendants failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

79.     Plaintiffs' experiences are therefore typical of the experiences of the Putative Class Members.

80.     The specific job titles or precise job locations of the Putative Class Members do not prevent class or collective treatment.

81.     Plaintiffs have no interests contrary to, or in conflict with, the Putative Class Members. Like each Putative Class Member, Plaintiffs have an interest in obtaining the unpaid overtime wages owed to them under state and/or federal law.

82.     A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

83.     Absent this action, many Putative Class Members likely will not obtain redress of their injuries and Defendants will reap the unjust benefits of violating the FLSA and applicable state labor laws.

84.     Furthermore, even if some of the Putative Class Members could afford individual litigation against Defendants, it would be unduly burdensome to the judicial system.

85.     Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

86.     The questions of law and fact common to the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

a.      Whether Defendants employed the Putative Class Members within the meaning of the applicable state and federal statutes, including the FLSA, Ohio Wage Acts, and PMWA;

b.      Whether the Putative Class Members were improperly misclassified as independent contractors;

c.      Whether Defendants decision to classify the Putative Class Members as independent contractors was made in good faith;

d.      Whether Defendants decision to not pay time and a half for overtime to the Putative Class Members was made in good faith;

e.      Whether Defendants violation of the FLSA, Ohio Wage Acts, and PMWA was willful; and

f.      Whether Defendants illegal pay practices were applied uniformly across the nation to all Putative Class Members.

87.     Plaintiffs' claims are typical of the claims of the Putative Class Members. Plaintiffs and the Putative Class Members sustained damages arising out of Defendants illegal and uniform employment policy.

88.     Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective or class action.

89.     Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective and class action treatment.

## JURY DEMAND

90.  Plaintiffs demand a trial by jury.

## RELIEF SOUGHT

91.  WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

   a.  An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

   b.  For an Order pursuant to Section 16(b) of the FLSA finding Defendants liable for unpaid back wages due to Plaintiffs and the Putative Class Members for liquidated damages equal in amount to their unpaid compensation;

   c.  For an Order designating the state law classes as class actions pursuant to Fed. R. Civ. P. 23;

   d.  For an Order appointing Plaintiffs and their counsel as Class Counsel to represent the interests of the both the federal and state law classes;

   e.  For an Order awarding attorneys' fees, costs and pre- and post-judgment interest; and

   f.  For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Michael A. Josephson*
Michael A. Josephson
Pennsylvania Bar No. 308410
Andrew Dunlap
Texas Bar No. 24078444
*(Pending Pro Hac Vice)*
**JOSEPHSON DUNLAP LAW FIRM**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

**AND**

Richard J. (Rex) Burch
Texas State Bar No. 24001807
(*Pending Pro Hac Vice*)
**BRUCKNER BURCH, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**AND**

Joshua P. Geist
PA. I.D. No. 85745
**GOODRICH & GEIST, P.C.**
3634 California Ave.
Pittsburgh, PA 15212
Tel: 412-766-1455
Fax: 412-766-0300
josh@goodrichandgeist.com

**ATTORNEYS IN CHARGE FOR PLAINTIFFS**