# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA
## PITTSBURGH DIVISION

| | | |
|---|---|---|
| **CHAD KAPOLKA AND BRETT TURRENTINE, Individually and on behalf of all Others Similarly Situated,** | § § § | Civil Action No. 2:18-cv-01007 |
| | § | **JURY TRIAL DEMANDED** |
| **Plaintiffs,** | § § | |
| **vs.** | § § | |
| **ANCHOR DRILLING FLUIDS, USA, LLC and Q'MAX AMERICA INC.,** | § § § | |
| **Defendants.** | § § | |

---

## PLAINTIFFS' AMENDED UNOPPOSED MOTION TO APPROVE COLLECTIVE ACTION SETTLEMENT AND DISMISS LAWSUIT WITH PREJUDICE

---

Michael A. Josephson
PA ID 308410
**Andrew Dunlap**
Texas Bar No. 24078444
**JOSEPHSON DUNLAP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

Joshua P. Geist
PA. I.D. No. 85745
**GOODRICH & GEIST, P.C.**
3634 California Ave.
Pittsburgh, PA 15212
Tel: 412-766-1455
Fax: 412-766-0300
josh@goodrichandgeist.com

**Richard J. (Rex) Burch**
State Bar No. 24001807
**BRUCKNER BURCH, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

## ATTORNEYS IN CHARGE FOR PLAINTIFFS

## I.  INTRODUCTION

Plaintiffs file this Amended Unopposed Motion to Approve Collective Action Settlement and Dismiss Lawsuit with Prejudice pursuant to the settlement reached in this case. The settlement is a reasonable compromise that will adequately compensate the participants for the unpaid overtime alleged and will eliminate the need for the parties to engage in protracted and expensive litigation.

## II.  BACKGROUND

Plaintiffs filed this collective action on July 27, 2018. ECF No. 1. Plaintiffs alleged Defendants Anchor Drilling Fluids, USA, LLC and Q'MAX America Inc. (collectively "Q'MAX") misclassified them and other similarly situated Solids Control Operators as independent contractors with no overtime compensation for hours worked in excess of 40 in a work week in violation of the Fair Labor Standards Act ("FLSA"),the Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. State. Ann. § 333.104, the Ohio Wage Act, Ohio Rev. Code §§ 4111.01 *et seq.*, and the Ohio Prompt Pay Act ("OPPA"), Ohio Rev. Code § 4113.15 (the Ohio Wage Act and the OPPA are collectively referred to as the "Ohio Wage Acts"). *Id.* Plaintiffs therefore claimed that they and the class members were entitled to unpaid back wages, as well as liquidated damages, attorneys' fees, interest, and costs. *Id.*; *see also* 29 U.S.C. § 216; 43 Pa. State. Ann. § 333.113; Ohio Rev. Code § 4111.10; Ohio Rev. Code § 4113.15.

On January 22, 2019, the parties mediated on behalf of a putative class of s Solids Control Operators classified as independent contractors and paid a day-rate within the applicable limitations period (collectively, the "Putative Class Members"). Leading up to mediation, Class Counsel[1] obtained significant compensation data for the Settlement Class Members to evaluate the scope of Q'MAX's alleged wage and hour violations. At mediation and for several months following mediation,

---

[1]      Unless otherwise defined in this motion, all capitalized terms shall have the meaning ascribed to them in the Settlement Agreement and Release attached as Exhibit 1.

negotiations were long and contentious. The parties hotly contested Q'MAX's actions, good faith, pay practices, and other issues. Ultimately, the following settlement was reached:

| | |
|---|---|
| Gross Settlement Fund: | $1,105,000.00 |
| Attorney Fees: | $386,750.00 |
| Plaintiffs' Costs and Expenses: | $6,390.23[2] |
| Administrative Costs: | $7,000.00 |
| Enhancement Award: | $10,000.00 |
| Net Settlement Fund: | $694,859.77[3] |

Ultimately, the Settlement Class Members will receive meaningful relief for their claimed overtime hours. Plaintiffs submit this is a fair and reasonable result of a *bona fide* dispute concerning the payment of wages to the Settlement Class Members. *See* <u>Exhibit 1</u>, Settlement Agreement and Release (the "Agreement"), at ¶¶ 2-8.

### III.   SETTLEMENT TERMS

The settlement terms are set forth in the Agreement. *See* Ex. 1. A summary of the settlement terms is as follows:

- The settlement is for a total of $1,105,000.00 (the "Gross Settlement Amount"). Ex. 1, at ¶ 9(j);

- The Settlement Class Members will each receive Settlement Payments based on an analysis of each workweek that each Settlement Class Member worked during the relevant time period *Id.* at ¶ 16;

- In exchange for the Settlement Payments, the Settlement Class Members will release Q'MAX and the Released Parties from any and all Released Claims. *Id.* at ¶ 10;

---

[2] This figure is the Plaintiffs' costs incurred to date. The Parties' settlement agreement states that recoverable costs shall not exceed $20,000.00.

[3] Any unused funds allocated to the administration of the settlement will be reallocated to the Net Settlement Fund.

FIRMWIDE:165087521.1 094097.1006

- The Settlement Payments to each of the Settlement Class Members will be composed of two equal payments. One payment will be subject to appropriate deductions and withholdings for wages by Q'MAX and reported on an IRS Form W-2 and the other payment will not be subject to deductions and withholdings by Q'MAX and will be reported on an IRS Form 1099. *Id.* at ¶ 17;

- Class Counsels' Cost and Fee Award shall be paid through an IRS Form 1099 ("1099 Payment"). The 1099 Payment is not to be subject to withholdings. *Id.* at ¶ 15(c); and

- Plaintiffs' counsel will receive $386,750.00 as a Fee Award and Costs not to exceed $20,000.00. *Id.*

### IV.     ARGUMENT & AUTHORITY

The FLSA provides that "any employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee ... affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be." 29 U.S.C. § 216(b). Because of the public interest in FLSA rights, there are only two ways that FLSA claims can be settled or compromised by employees in this Circuit: (1) a compromise supervised by the Department of Labor pursuant to 29 U.S.C. § 216(c); or (2) a district court-approved compromise pursuant to 29 U.S.C. § 216(b)." *Adams v. Bayview Asset Mgmt., LLC,* 11 F.Supp.3d 474, 476 (E.D. Pa. Feb. 26, 2014) (citing *Lynn's Food Stores Inc. v. United States Dept. of Labor,* 679 F.2d 1350, 1354 (11th Cir. 1982)). In the latter situation, "a district court may enter a stipulated judgment after determining that the proposed settlement 'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Dino v. Pennsylvania,* C.A. 1:08–cv–01493, 2013 WL 4041681, at *3 (M.D. Pa. Aug. 8, 2013) (quoting *Lynn's Food Stores, Inc.,* 679 F.2d at 1352); *Vargas v. Gen. Nutrition Centers, Inc.,* C.A. 2:10-cv-00867, 2015 WL 4155449, at *1 (W.D. Pa. Mar. 20, 2015).

4

## A. A *bona fide* dispute existed

A dispute is "*bona fide*" when it involves "factual issues" rather than "legal issues such as the statute's coverage and applicability," *Lignore v. Hosp. of Univ. of Pa.,* C.A. 2:04-cv-05735, 2007 WL 1300733, at *3 (E.D. Pa. May 1, 2007) (quoting *Morris v. Penn Mut. Life Ins. Co.,* 1989 WL 14063, at *4 (E.D. Pa. 1989)), and when its settlement "reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching...." *Brumley v. Camin Cargo Control, Inc.,* C.A. 2:08-cv-01798, 2012 WL 1019337, at *2 (D.N.J. Mar. 26, 2012) (quoting *Lynn's Food,* 679 F.2d at 1354); *see also Creed v. Benco Dental Supply Co.,* C.A. 3:12-cv-01571, 2013 WL 5276109, at *1 (M.D. Pa. Sept. 17, 2013).

Further, Congress has recognized that due to the unequal bargaining power between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part that endangered national health and efficiency and, as a result, the free movement of goods in interstate commerce. *See Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 706-07 (1945).[4] This inherent inequality, of course, is diminished when workers are represented by experienced counsel. *See, e.g., Lliguichuzhca v. Cinema 60, LLC,* 948 F.Supp.2d 362, 365 (S.D.N.Y. 2013) (giving weight to the fact that "plaintiffs were represented by highly competent counsel"); *see also Fernandez v. A-1 Duran Roofing, Inc.,* 2013 WL 684736, at *1 (S.D. Fla. Feb. 25, 2013) (finding court approval of an FLSA settlement unnecessary where "both Parties were represented by counsel and therefore negotiated a settlement … in an adversarial proceeding"). Courts can therefore "approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Diaz v. Scores Holding Co., Inc.,* C.A. 1:07-cv-08718, 2011 WL 6399468, at *2 (S.D.N.Y. July

---

[4] *Brooklyn Savings Bank,* 324 U.S. 697 (1945) (requiring Court or Department of Labor approval for FLSA settlements, and explaining the low standard for judicial review when the parties are represented by counsel); *see also Evans v. Jeff D.,* 475 U.S. 717, 726-27 (1986) (in deciding whether the proposed settlement reflects a "reasonable compromise" of a bona fide dispute, the Court may either accept or reject it, but should not require the parties to accept any revisions or modifications to the agreement).

11, 2011). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Id.* Absent unusual circumstances, "there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca*, 948 F. Supp. 2d at 365 (internal quotes omitted). "If the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved." *McMahon v. Olivier Cheng Catering & Events, LLC*, C.A. 1:08-cv-08713, 2010 WL 2399328, at *6 (S.D.N.Y. Mar. 3, 2010).

In the instant case, the parties fiercely contested the claims and defenses asserted. Plaintiffs alleged that the Putative Class Members were misclassified as independent contractors with no overtime compensation. ECF No. 1. Plaintiffs alleged that this alleged violation of the FLSA, PMWA, and Ohio Wage Acts exposed Q'MAX to substantial liability for back wages, liquidated damages, attorneys' fees, and costs. *Id.*; 29 U.S.C. § 216(b); 43 Pa. State. Ann. § 333.113; Ohio Rev. Code § 4111.10; Ohio Rev. Code § 4113.15. The parties disputed liability in this case, and only through ongoing arm's-length negotiations were they able to reach a compromise. Further, the parties contested whether Q'MAX's classification and pay policy with regard to the Putative Class Members was made in good faith, or whether Q'MAX's alleged violations of the FLSA, PMWA, and Ohio Wage Act were willful. ECF Nos. 1 and 11.

As a result of these arguments, and as reflected in the supporting documentation, and extensive informal discovery, the current settlement before the Court is the result of a *bona fide* dispute.

**B. The settlement is fair and reasonable.**

Courts presented with a proposed settlement of an FLSA claim engage in a two-part analysis. First, the Court must determine if the settlement is fair and reasonable to the employee or employees involved. *See McGee v. Ann's Choice, Inc.*, C.A. 2:12-cv-02664, 2014 WL 2514582, at *2 (E.D. Pa. June 4, 2014). If it is, the Court next considers "whether the agreement furthers or impermissibly frustrates

6

the implementation of FLSA in the workplace." *Id.* at *4; *see also Lyons v. Gerhard's Inc.*, C.A. 2:14-cv-06693, 2015 WL 4378514, at *3-4 (E.D. Pa. July 16, 2015).

"It is helpful to recall the guiding principles of settlement in modern litigation, bearing in mind the unique role played by the Court in FLSA collective action disputes." *Deitz v. Budget Renovations & Roofing, Inc.*, No. 4:12-CV-0718, 2013 WL 2338496, at *4 (M.D. Pa. May 29, 2013). The standard for approval of FLSA settlements is comparatively lenient. "[U]nlike its role in Rule 23 actions to serve as caretaker and protect absent class members, the court in FLSA class actions serves as gatekeeper to ensure that the parties are not 'negotiating around the clear FLSA requirements' via settlement." *Acevedo v. Brightview Landscapes, LLC*, No. CV 3:13-2529, 2017 WL 4354809, at *13 (M.D. Pa. Oct. 2, 2017) (quoting *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at 18 (D.N.J. Apr. 8, 2011)). "In general, settlement is the preferred means of resolving litigation, and there remains a 'strong presumption' in favor of finding a settlement fair. The Court must also keep in mind that a settlement represents a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *Deitz*, No. 4:12-CV-0718, 2013 WL 2338496, at *4 (internal citations omitted).

Here, despite the informal discovery that has already occurred, both sides would require substantial additional discovery including a high number of costly depositions in order to place the case in a trial posture. Continued litigation would result in a significant expenditure of resources and would likewise place a substantial drain on judicial resources. *See Craig v. Rite Aid Corp.*, No. 4:08-CV-2317, 2013 WL 84928, at *9 (M.D. Pa. Jan. 7, 2013). Settlement is appropriate, and the court should not have to needlessly expend judicial resources on a matter that neither party has any interest in continuing to litigate. *See Deitz*, No. 4:12-CV-0718, 2013 WL 2338496, at *5.

Importantly, Plaintiffs agree that the terms of the Agreement are fair and reasonable, and Plaintiffs have raised no objections to the Agreement's terms. Plaintiffs' positions strongly support the approval of the Agreement.

FIRMWIDE:165087521.1 094097.1006

Moreover, the Agreement here was negotiated by attorneys who have been vigorously prosecuting and/or defending this and similar claims for many years.[5] Both sides have had considerable experience in prosecuting, defending, and settling federal and state wage and hour claims previously, and, in this case, were particularly well informed as to the facts and circumstances of the litigation. *Austin v. Pennsylvania Dep't of Corrs.*, 876 F. Supp 1437, 1472 (E.D. Pa. 1995) ("in determining the fairness of a proposed settlement, the court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class"); *Fisher Brothers v. Phelps Dodge Indus., Inc.*, 604 F. Supp. 446 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight."); *see also In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight."). Both Parties feel that the Settlement of $1,105,000.00 is reasonable. *See Austin*, 876 F. Supp at 1472 (E.D. Pa. 1995) ("in determining the fairness of a proposed settlement, the court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class"); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 787-88 (3d Cir. 1995); *Fisher Brothers v. Phelps Dodge Indus., Inc.*, 604 F. Supp. 446 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight."); *Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659 (D. Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight."). This favors approval of the Agreement.

---

[5] Class Counsel has served as lead counsel in numerous of large-scale wage and hour class/collective actions. *See, e.g., Roussell v. Brinker Int'l, Inc.*, C.A. 2:09-cv-20561, 2011 WL 4067171 (5th Cir. Sept. 14, 2011) (affirming jury verdict in FLSA collective action); *Belt v. EmCare, Inc.*, 444 F.3d 403 (5th Cir. 2006) (affirming summary judgment in favor of a nationwide class of FLSA plaintiffs). Q'MAX is represented by experienced employment litigation specialists, including David Jordan from Littler Mendelson P.C.

Finally, there is no foundation to dispute the fairness of this proposed Agreement, which resulted from arm's length negotiations. The Agreement does not grant preferential treatment to the named plaintiffs, and it does not provide excessive compensation to counsel. *See In re Inter-Op Prosthesis Liab. Litig.*, 204 F.R.D. 359, 379 (N.D. Ohio 2001). Accordingly, the standards for approval are met in this case, and the Court should grant Plaintiffs' motion and approve the Agreement in its entirety. *See also In re NASDAQ Market Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1999).

## V.   AWARD OF ATTORNEYS' FEES AND COSTS

Pursuant to Rule 54(d)(2), Plaintiffs' Counsel seeks a Cost and Fee Award in the amount of $386,750.00 in attorneys' fees and all reasonable costs and expenses not to exceed $20,000.00. After extensive negotiation, Q'MAX does not oppose Class Counsel's application for these payments and costs. *See generally*, Ex. 1.

### A.  The attorney fees and costs requested are reasonable and customary

Under Third Circuit law, a Court may evaluate the award of attorneys' fees through two established methods: (1) the lodestar approach; and (2) the percentage of the recovery approach. *In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 540 (3d Cir. 2009); *In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006). Under the common fund doctrine, "a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 187 (3d Cir. 2005) (citation omitted). When calculating attorneys' fees in such cases, the percentage-of-recovery method is generally favored. *In re Diet Drugs*, 582 F.3d at 540 (citing *In re Prudential Ins. Co.*, 148 F.3d 283, 333 (3d Cir. 1998)).

In determining what constitutes a reasonable percentage fee award in the Third Circuit, a district court must consider ten factors: (1) the size of the fund created and the number of beneficiaries; (2) the presence or absence of substantial objections by Plaintiffs to the settlement terms

9

and/or fees requested by counsel; (3) the skill and efficiency of the attorney involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by counsel; (7) the awards in similar cases; (8) the value of benefits attributable to the efforts of Plaintiffs' counsel relative to the efforts of other groups, such as government agencies conducting investigations; (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and (10) any innovative terms of Settlement. *In re Diet Drugs*, 582 F.3d at 541 (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir. 2000) and *In re Prudential,* 148 F.3d at 342). These factors support approval of the requested fee and are discussed below.

1. The size of the fund created and the number of beneficiaries, as well as the value of the benefits supports the requested fee.

The results obtained represent a significant benefit in the face of the many legal and factual risks posed by litigation. Here, the net settlement amount will be distributed to Plaintiffs on a *pro rata* basis dependent upon the number of weeks of overtime at issue. *See* Ex. 1, ¶ 16.

More specifically, the Settlement Payments are based on an analysis of each the weeks that each Settlement Class Member worked for Q'MAX during the relevant time period. The Agreement represents a substantial portion of alleged unpaid overtime damages owed to the Settlement Class Members. For these reasons, the Agreement creates a substantial benefit for the Settlement Class Members. *See* Exhibit 2, Dunlap Decl. at ¶¶ 23-29.

2. The absence of substantial objections by Plaintiffs supports the fee.

To date, there have been no objections to either the settlement terms generally or to the attorneys' fee request specifically. The absence of any objection weighs in favor of the fee request. *See Bredbenner*, 2011 WL 1344745, at *20.

10

3. <u>The skill and efficiency of Plaintiffs' counsel that enabled them to obtain this result supports the requested fee.</u>

In evaluating the skill and efficiency of the attorneys involved, courts have looked to "the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *Chemi v. Champion Mortg.*, C.A. 05-cv-1238, 2009 WL 1470429, at *11 (D.N.J. May 26, 2009) (internal quotations omitted).

Here, Class Counsel includes attorneys with significant employment law as well as class and collective action experience. *See* Ex. 2, ¶¶ 3-11. Class Counsel assumed a very real risk in taking on this case. Class Counsel took the case on a contingency basis, and was prepared to invest time, effort, and money over a period of years with no absolutely no guarantee of any recovery. *See* Ex. 2, ¶ 8.

The Agreement reached with Q'MAX, which involves complex provisions that are specific to Section 216(b)'s collective action provision of the FLSA and state wage and hour law, is a reflection of Class Counsels' experience. *See* Ex. 2, ¶¶ 3-18. This Agreement was reached after extensive fact discovery, including exchanging numerous pages of documents, and ongoing arm's length settlement negotiations between counsel for the Parties. Ex. 2, ¶¶ 19-22.

The Agreement provides the Settlement Class Members with substantial benefits without having to wait for years of drawn out litigation. Accordingly, this factor favors the requested fee.

4. <u>The complexity and duration of the litigation favor approval.</u>

As discussed above, this case has been pending for nearly a year and documents pertaining to Q'MAX's procedures and payments to the Settlement Class Members were obtained through formal and informal discovery. Given this discovery, this factor still weighs in favor of awarding the requested fee. *Keller v. TD Bank*, N.A., No. CIV.A. 12-5054, 2014 WL 5591033, at *15 (E.D. Pa. Nov. 4, 2014). The parties engaged in analysis of wage-and-hour records for each plaintiff. Moreover, further litigation of this case without a settlement would be lengthy and expensive for both Parties.

11

5.   <u>There was a significant risk of nonpayment.</u>

Class Counsel represented Plaintiffs entirely on a contingent basis, with no guarantee of payment, and there were significant hurdles to overcome in achieving the settlement. Ex. 2 at ¶ 8. Class Counsel invested time and expenses despite the potential that the court would find no violation of the FLSA, PMWA, or the Ohio Wage Act, despite the possibility of appeal(s). Given these considerations, the significant risk of non-payment weighs in favor of the requested fee. *See Brumley v. Camin Cargo Control, Inc.*, No. CIV.A. 08-1798 JLL, 2012 WL 1019337, at *11 (D.N.J. Mar. 26, 2012)

6.   <u>Plaintiffs' Counsel devoted substantial time to the case.</u>

Class Counsel consisted of a team of attorneys, paralegals and staff all dedicated to working up and prosecuting the Putative Class Members' claims. This work included investigation and interviews with Plaintiffs, obtaining statements from Plaintiffs, reviewing documents Q'MAX produced, reviewing and analyzing time and payroll data, and engaging in extensive settlement negotiations.  *See generally* Ex. 2. These efforts support the approval of the fee requested. *See Brumley*, No. CIV.A. 08-1798 JLL, 2012 WL 1019337, at *11.

7.   <u>The awards in similar cases support the requested fee.</u>

The requested fee is also consistent with awards in similar cases. *See* Ex. 2, ¶ 30. The Third Circuit has noted that fee awards generally range from 19% to 45% of the Settlement Award. *See Brumley.,* No. CIV.A. 08-1798 JLL, 2012 WL 1019337, at *12 (approving fee of one-third of the common fund and citing *In re Gen. Motors.*, 55 F.3d at 822).

Here, Class Counsels' request for approximately 35% of the Gross Settlement Amount falls well within the range of reasonable allocations in the context of awards granted in other, similar cases. *See, e.g., Seagraves v. Range Resources Corporation*, C.A. 2:17-cv-1009-JFC (W.D. PA Oct. 16, 2018) ECF No. 40 (approving 33.33% attorney fees); *Rouse v. Comcast Corp.*, 2015 WL 1725721, at *12 (E.D. Pa. 2015) (allowing percentage-of-recovery for attorney's fees at roughly 35% for FLSA, PMWA, and

FIRMWIDE:165087521.1 094097.1006

WPCL claims); *Stivers v. Office Depot*, No. 12-cv-1534 (W.D. Pa. Sept. 19, 2013) (Eddy, J.) (approving fee award of 33.33% of the total settlement amount to class counsel in wage and hour settlement); *Caudell v. RDL Energy Services, LP*, No. 2:11-cv-01523-JFC (W.D. Pa. Jul. 30, 2012) (Conti, J.) (same); *Bearden v. Precision Air Drilling Services, Inc.*, No. 2:11-cv-01511- NBF (W.D. Pa. Sept. 26, 2012) (Fischer, J.) (same); *Thomas v. Allis-Chalmers*, No. 2:10-cv- 01591-RCM (W.D. Pa. Sept. 11, 2012) (Mitchell, J.) (same); *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745 (D.N.J. Apr. 8, 2011) (approving an award of 32.6% of the Settlement fund); *Erie County Retirees Assoc. v. County of Erie. Pa.*, 192 F.Supp.2d 369, 382-83 (W.D. Pa. 2002) (McLaughlin, J.) (38% of common fund awarded as fees in ADEA collective action case brought pursuant to 29 U.S.C. §216(b)); *see also Williams v. Aramark Sports, LLC*, No. 10-cv-1044, 2011 WL 4018205, at *10 (E.D. Pa. Sept. 9, 2011) (noting that study of class action fee awards within the Third Circuit found that average attorney's fees percentage in such cases was 31.71% and the median award was 33.3%). The attorneys' fees request of approximately 35% of the Gross Settlement Amount also comports with privately negotiated contingent fees negotiated on the open market. *See Bredbenner*, 2011 WL 1344745, at *21.

Accordingly, the fees approved in similar cases further support the requested fee here.

8.  <u>Plaintiffs' Counsel's costs should be approved.</u>

In addition to being entitled to reasonable attorneys' fees, the FLSA, PMWA, and the Ohio Wage Acts provide for the reimbursement of costs. *See* 29 U.S.C. § 216(b); 43 P.S. § 333.113 ("worker may recover in a civil action the full amount of such minimum wage less any amount actually paid to the worker by the employer, together with costs and such reasonable attorney's fees as may be allowed by the court…"); Ohio Rev. Code § 4111.10 ("Any employer who pay an employee less than wages to which the employee is entitled … is liable to the employee affected for the [unpaid back wages] … and for costs and reasonable attorneys' fees…").

FIRMWIDE:165087521.1 094097.1006

Here, Class Counsel has agreed that the Cost and Fee Award includes Class Counsel's costs and expenses in bringing this action. Class Counsel's costs will include reasonable out-of-pocket expenditures such as filing fees, travel for hearings, mediation, client meetings, and Westlaw. *See* Ex. 2, ¶ 31. *See Oh v. AT&T Corp.*, 225 F.R.D. 142, 154 (D.N.J. 2004) (finding expenses such as "(1) travel and lodging, (2) local meetings and transportation, (3) depositions, (4) photocopies, (5) messengers and express service, (6) telephone and fax, (7) Lexis/Westlaw legal research, (8) filing, court and witness fees, (9) overtime and temp work, (10) postage, and (11) the cost of hiring a mediator, to be reasonable). All of these expenses were reasonable and necessary for the successful prosecution of this case, and pursuant to the terms of the Settlement Agreement, Q'MAX does not object to the request for costs. *See* Ex. 1.

## VI.   DISMISSAL OF LAWSUIT WITH PREJUDICE

In addition to approving the Agreement, Plaintiffs request that the Court dismiss this lawsuit with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2).

## VII.   CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court grant the Unopposed Motion to Approve Collective Action Settlement and to Dismiss Lawsuit with Prejudice.

Respectfully submitted,

*/s/ Andrew W. Dunlap*
**Michael A. Josephson**
Pennsylvania Bar No. 308410
Texas Bar No. 24014780
**Andrew Dunlap**
Texas Bar No. 24078444
JOSEPHSON DUNLAP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

14

**AND**

*/s/ Joshua P. Geist*
**Joshua P. Geist**
PA. I.D. No. 85745
Goodrich & Geist, P.C.
3634 California Ave.
Pittsburgh, PA 15212
Tel: 412-766-1455
Fax: 412-766-0300
josh@goodrichandgeist.com

**AND**

Richard J. (Rex) Burch
Texas Bar No. 24001807
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served by ECF electronic filing on all known parties on September 17, 2019 in accordance with the Federal Rules of Civil Procedure.

*/s/ Andrew W. Dunlap*
Andrew W. Dunlap

## CERTIFICATE OF CONFERENCE

I conferred with Counsel for Q'MAX, and, pursuant to the Parties' Settlement Agreement and Release (Ex. 1), Q'MAX is not opposed to the relief sought herein.

*/s/ Andrew W. Dunlap*
Andrew W. Dunlap

15

FIRMWIDE:165087521.1 094097.1006