# EXHIBIT 1

## CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE

1.      This Confidential Settlement Agreement and Release (the "Settlement Agreement") is entered into between: (1) Plaintiffs Chad Kapolka and Brett Turrentine ("Plaintiffs") on the one hand; and (2) Anchor Drilling Fluids USA, LLC and Q'Max America Inc. (hereinafter collectively "QAI") on the other hand, (and all together, hereinafter, the "Parties"), subject to the approval of the Court (as defined herein).

## <u>RECITALS</u>

2.      Plaintiffs Kapolka and Turrentine, individually and on behalf of the Settlement Class (as defined herein), assert in the Kapolka Action (as defined herein), that QAI failed to pay proper overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and state laws related to the payment of wages.

3.      As a result of the Parties' arms'-length negotiations and mediation with an experienced wage and hour mediator, Carole Katz, the Parties have agreed to settle the Kapolka Action according to the terms of this Settlement Agreement.

4.      Class Counsel (as defined herein) has made a thorough and independent investigation of the facts and law relating to the allegations in the Kapolka Action.  In entering into this Settlement Agreement, Class Counsel has considered: (a) the facts developed during the Parties' ADR process and the law applicable thereto; (b) the attendant risks of continued litigation and the uncertainty of the outcome of the claims alleged against QAI; and (c) the desirability of consummating this settlement according to the terms of this Settlement Agreement. Plaintiffs have concluded that the terms of this Settlement Agreement are fair, reasonable and adequate, and that it is in the best interests of themselves and the Settlement Class to settle their claims against QAI pursuant to the terms set forth herein.

5.      QAI denies the allegations in the Kapolka Action and denies that they engaged in any wrongdoing or violation of law.  QAI is entering into this Settlement Agreement because it will eliminate the burden, risk and expense of further litigation. Except for purposes of effectuating the Parties' settlement, neither this Settlement Agreement nor any document referred to herein, nor any action taken to carry out this Settlement Agreement, may be used in any way as an admission, concession or indication by or against QAI of any fault, wrongdoing or liability whatsoever, including

1

any concession that certification of a class other than for purposes of this Settlement Agreement would be appropriate in the Kapolka Action or any other case.

6. The Parties recognize that Court approval of this Settlement Agreement is required to effectuate the Settlement Agreement, and that the Settlement Agreement will not become operative until the Court grants approval of it and the Settlement Agreement becomes effective.

7. The Parties stipulate and agree that, for settlement purposes only, the requisites for establishing collective action certification under the FLSA pursuant to 29 U.S.C. § 216(b) are met. Should this Settlement Agreement not become final, such stipulation to collective action certification shall become null and void and shall have no bearing on, and shall not be admissible in connection with, the issue of whether or not certification would be appropriate in a non-settlement context.

8. In consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by each party to the other, IT IS HEREBY AGREED, by and between the undersigned, subject to the approval of the Court and the other conditions set forth herein, that Plaintiffs and the Eligible Class Members' (as defined herein) lawsuit against QAI shall be settled, compromised and dismissed, on the merits and with prejudice, and that the Released Claims (as defined herein) shall be finally and fully compromised, settled and dismissed as to the Releasees (as defined herein), in the manner and upon the terms and conditions set forth herein.

## DEFINITIONS

9. The following terms used in this Settlement Agreement shall have the meanings ascribed to them below:

a. "Kapolka Action" means the matter of *Chad Kapolka et al v. Anchor Drilling Fluids, USA, LLC et al.,* C.A. 2:18-cv-01007, in the United States District Court for the Western District of Pennsylvania, Pittsburgh Division.

b. "Approval Order" means the Court's approval order approving the terms and conditions of this Settlement Agreement.

c. "Class Counsel" means Josephson Dunlap, Bruckner Burch, PLLC, and Goodrich & Geist, P.C.

2

d.    "Class Period" means three years prior to the date of the Approval Order through the date of the Approval Order, except as to those that have already joined the Kapolka Action, in which the Class Period is three years prior to the joining of the Kapolka Action through the date of the Approval Order.

e.    "Court" means the United States District Court for the Western District of Pennsylvania, Pittsburgh Division.

f.    "Defendants' Counsel" means Littler Mendelson, P.C.

g.    "Eligible Class Member" means Plaintiffs and all Settlement Class Members who timely opt-in to the Settlement Class.

h.    "Effective Date" means the first business day following the Court's Approval Order.

i.    "Fee Award" means the award of attorneys' fees that the Court authorizes to be paid to Class Counsel for the services they provided to Plaintiffs and the Settlement Class in the Kapolka Action.

j.    "Gross Settlement Amount" means the maximum amount that QAI shall pay in exchange for the release of all Released Claims by Plaintiffs and the Eligible Class Members, which is the sum of $1,105,000.00, excluding QAI's share of federal and state payroll taxes.  In no event shall the Gross Settlement Amount exceed this sum.

k.    "Net Settlement Amount" means the Gross Settlement Amount less: (i) the payment of attorneys' fees to Class Counsel, not to exceed $386,750.00, which is approximately thirty-five percent of the Gross Settlement Amount; (ii) the payment of out-of-pocket costs incurred by Class Counsel not to exceed $20,000.00; (iii) a service award to Chad Kapolka  in an amount not to exceed $5,000.00.; (iv) a service award to Brett Turrentine in an amount not to exceed $5,000.00; and (v) the Settlement Administrator's costs, which shall be $7,000.00.

l.    "Notice Deadline" means the date sixty (60) days after the Notice of Settlement (as defined herein) and the Settlement Consent Form (as defined herein) are initially mailed by Class Counsel (or the Settlement Administrator) to the Settlement Class.  Settlement Class Members shall have until the Notice Deadline to submit their Settlement Consent Form.

FIRMWIDE:165348137.1 094097.1006

m.       "Notice of Settlement" means the notice to the Settlement Class substantially in the form as Exhibit A attached hereto or as approved by the Court.

n.       "Released Claims" means any and all state, local or federal claims, obligations, demands, actions, rights, causes of action and liabilities, whether known or unknown, against Releasees (as defined herein) for alleged unpaid overtime wages, liquidated or other damages, unpaid costs, penalties (including late payment penalties), premium pay, interest, attorneys' fees, litigation costs, restitution or any other compensation and relief arising under the FLSA or any other state or local wage-related law applicable to the work performed for Anchor Drilling Fluids USA, LLC, Anchor Drilling Fluids, USA, Inc., Q'Max America Inc., Q'Max Solutions Inc., or any parent, subsidiary, affiliate, predecessor or successor of such entities. The Parties acknowledge that only Eligible Class Members shall release their FLSA and state and local wage and hour law claims against Releasees.

o.       "Releasees" means Anchor Drilling Fluids USA, LLC, Anchor Drilling Fluids, USA, Inc., Q'Max Solutions Inc., Q'Max America Inc., Calumet GP, LLC, and Calumet Specialty Products Partners, L.P., and their past, present and future parent companies, subsidiaries, affiliates, agents, employees, owners, members, shareholders, divisions, officers, directors, partners, benefit plans, co-employers, joint employers, indemnitors, indemnitees, contractors, vendors, investors, legal representatives, accountants, trustees, executors, administrators, real or alleged alter egos, predecessors, successors, transferees, assigns, and insurers.

p.       "Settlement Administrator" means ILYM subject to the approval of the Court.

q.       "Settlement Award" means the payment that each Eligible Class Member shall be entitled to receive pursuant to the terms of this Settlement Agreement.

r.       "Settlement Class" or "Settlement Class Member" means all individuals who are covered by this Settlement Agreement.

s.       "Settlement Consent Form" means the form attached hereto as Exhibit B, subject to the approval of the Court.

4

## RELEASES

10.    **Release**.  In consideration of the benefits to be received by the Eligible Class Members under this Settlement Agreement, upon the Effective Date:

a.    Plaintiffs Chad Kapolka and Brett Turrentine shall be deemed to have released and forever discharged Releasees from any and all Released Claims, and, in addition, shall be deemed to have released and forever discharged Releasees from any and all claims, demands, rules or regulations, or any other causes of action of whatever nature, whether known or unknown, including but not limited to Title VII of the Civil Rights Act of 1964, as amended; Sections 1981 through 1988 of Title 42 of the United States Code, as amended; The Genetic Information Nondiscrimination Act of 2008 (GINA); The Employee Retirement Income Security Act of 1974 ("ERISA") (except for any vested benefits under any tax qualified benefit plan); The Civil Rights Act of 1991; The Immigration Reform and Control Act; The Americans with Disabilities Act of 1990; The Family and Medical Leave Act; The Equal Pay Act; or any allegation for costs, fees, interest, or other expenses including attorneys' fees incurred in any matter; or any and all claims for bonuses, commissions or any claims for incentive compensation of any type, whether under common law or policy or contract, and any other federal, state or local human rights, civil rights, wage-hour, pension or labor laws, rules and/or regulations, public policy, any and all claims that were asserted or that could have been asserted in the Kapolka Action, any claim for breach of contract or tort laws, or any claim arising under common law, such as claims for malicious prosecution, misrepresentation, defamation, false imprisonment, libel, slander, invasion of privacy, negligence, claims based on theories of strict liability or *respondeat superior*, infliction of emotional distress, or otherwise, or any other action or grievance against the Releasees based upon any conduct occurring up to and including the date of the Court's Approval Order.  Plaintiffs irrevocably waive any right to monetary recovery from the Releasees, whether sought directly by any of them or in the event any administrative agency or other public authority, individual, or group of individuals should pursue any claim on any of their behalves; Notwithstanding the previous sentence, this Settlement Agreement does not limit Plaintiffs' right to receive an award for information provided to any government agency.

b.    Eligible Class Members (as defined herein) shall be deemed to have released and discharged the Releasees from the Released Claims defined above.

c.    Notwithstanding any other provision of this Settlement Agreement, this release does not (i) waive or release any claim for breach or

5

enforcement of this Settlement Agreement; (ii) waive or release any right or claim that may not be waived or released by applicable law; (iii) waive or release any rights to unemployment compensation benefits or workers' compensation ; or (iv) prevent an Eligible Class Member from pursuing any administrative claim for unemployment compensation or workers' compensation benefits.  Nothing in this Settlement Agreement precludes an Eligible Class Member from (i) reporting to, responding to an inquiry from, filing a charge or complaint with, communicating with or providing information to, contacting, or cooperating with an investigation conducted by the Equal Employment Opportunity Commission, the Department of Labor, the National Labor Relations Board, the Occupational Safety and Health Administration, the Securities and Exchange Commission, or any other federal, state, or local governmental agency, commission, or regulatory body; (ii) providing information about this Settlement Agreement to his/her immediate family members, attorney, or accountant or tax advisor (if any); or (iii) making disclosures or giving truthful testimony as required by law or valid legal process (such as by a subpoena or administrative order).

## CERTIFICATION, NOTICE, AND SETTLEMENT IMPLEMENTATION

11.    The Parties agree to the following procedures for obtaining approval of the settlement, certifying the Settlement Class for the purpose of settlement only, and notifying the Settlement Class of this settlement:

a.    **Request for Class Certification and Approval Order**.  Within 10 days of execution of this Settlement Agreement, Plaintiffs shall file a Motion for Approval of Settlement Agreement, requesting that the Court approve the settlement, certify the Settlement Class pursuant to 29 U.S.C. § 216(b) for settlement purposes only and approve the Notice and Consent forms attached hereto as Exhibits A and B.

b.    **Notice**.  The Settlement Administrator shall be responsible for preparing, printing, and mailing the Notice of Settlement and Settlement Consent Form to all Settlement Class Members.

c.    No later than 20 business days following the Approval Order, QAI shall provide Class Counsel with the names, and last known addresses to the extent QAI is able to obtain such information, of Settlement Class Members (hereinafter, the "Class List").

d.    In order to provide the best notice practicable, the Settlement Administrator, prior to mailing the Notice of Settlement and Settlement Consent Form,

6

will run the list of Settlement Class Members through the U.S. Postal Service's National Change of Address database ("NCOA") and perform a skip trace.

e.    Within ten (10) business days after receiving the Class List, the Settlement Administrator shall send copies of the Court-approved Notice of Settlement and Settlement Consent Form to all Settlement Class Members via U.S. first class mail, with an enclosed self-addressed postage prepaid return envelope. Furthermore, on the 30th day following the sending of the Court-approved Notice of Settlement, the Settlement Administrator shall again mail a reminder Notice, identical to the first Notice, to all Settlement Class Members via U.S. first class mail that have not already submitted a Settlement Consent Form.

f.    Any Notice of Settlement and Settlement Consent Form returned to the Settlement Administrator with a forwarding address shall be re-mailed by the Settlement Administrator within five (5) business days following receipt of the returned mail. If any Notice of Settlement and Settlement Consent Form is returned to the Settlement Administrator without a forwarding address, the Settlement Administrator shall undertake reasonable efforts such as skip traces to search for the correct address within five (5) business days and shall re-mail the Notice of Settlement and Settlement Consent Form to any newly found addresses within five (5) business days of finding the new address(es).

12.    **Interim Report by the Settlement Administrator**. Within five (5) business days after the Notice Deadline, the Settlement Administrator shall confirm (i) the total number of Settlement Class Members who were sent the Notice of Settlement and Settlement Consent Form; and (ii) the total number of Settlement Class Members who timely returned the Settlement Consent Form.

13.    **Confidentiality and Court Filings Shall be Under Seal.** The Parties, any Eligible Class Member, and their Counsel agree that this Settlement Agreement shall be kept confidential, except as may be required by the Court for filing and review of this Settlement Agreement. The Parties, any Eligible Class Member, and their counsel further expressly agree not to share the terms of this settlement with the media or reference the terms of this lawsuit on their websites, including, any social media websites.

14.    **Dismissal of the Actions.** The Court Approval Order shall incorporate a provision dismissing Plaintiffs' claims and the claims of other Eligible Class Members with prejudice. Additionally, within three (3) business days following the Approval Order, the Kapolka Action will be dismissed with prejudice.

FIRMWIDE:165348137.1 094097.1006

## SETTLEMENT FUNDS AND AWARD CALCULATION

15. **Settlement Amount**.

a. **Funding.** No later than the latter of twenty (20) calendar days from the Settlement Administrator's Final Report detailed herein or March 31, 2020, QAI shall wire to the Settlement Administrator the amounts due to the Eligible Class Members, as well as any employer side federal or state payroll taxes, the service awards and the costs of administration.

b. **Disbursement by Settlement Administrator**. All disbursements shall be made from an IRS-qualified settlement fund set up by the Settlement Administrator (hereinafter, "Qualified Settlement Fund"). The Settlement Administrator shall be the only entity authorized to make withdrawals or payments from the Qualified Settlement Fund.

c. **Interest**. The interest on the funds deposited by QAI will inure *pro rata* to the Party or persons to whom the underlying funds are ultimately paid out.

16. **Payments**. Subject to the Court's Approval Order, the following amounts shall be paid by the Settlement Administrator from the Gross Settlement Amount:

a. **Service Award to Chad Kapolka**. Chad Kapolka shall receive $5,000.00 for his efforts in bringing and prosecuting the Kapolka Action, and in consideration of the general release set forth above in Paragraph 10(a). The Qualified Settlement Fund shall issue an IRS Form 1099 for this payment. Kapolka shall be solely and legally responsible for all taxes on this service award. This payment shall be made by the Settlement Administrator within 10 calendar days after the Funding date described in Paragraph 15.a. above.

b. **Service Award to Brett Turrentine.** Brett Turrentine shall receive $5,000.00 for his efforts in bringing and prosecuting the Kapolka Action, and in consideration of the general release set forth above in Paragraph 10(a). The Qualified Settlement Fund shall issue an IRS Form 1099 for this payment. Turrentine shall be solely and legally responsible for all taxes on this service award. This payment shall be made by the Settlement Administrator within 10 calendar days after the Funding date described in Paragraph 15.a. above.

8

c.    **Attorneys' Fees and Costs**.

(i)    QAI shall wire Class Counsel attorneys' fees in an amount of \$386,750.00, which is approximately thirty-five percent of the Gross Settlement Amount and the payment of out-of-pocket costs incurred by Class Counsel not to exceed \$20,000.00 which will compensate Class Counsel for all work performed in the Kapolka Action as of the date of this Settlement Agreement as well as all of the work remaining to be performed, including but not limited to documenting the settlement, securing Court approval of the settlement, making sure that the settlement is fairly administered and implemented, and obtaining final dismissal of the Kapolka Action. QAI shall wire these amounts no later than the latter of thirty (30) days of the Effective Date or March 31, 2020.

(ii)    The attorneys' fees and costs paid by QAI pursuant to this Settlement Agreement shall constitute full satisfaction of QAI's obligation to pay amounts to any person, attorney or law firm for attorneys' fees or costs in the Kapolka Action on behalf of any Eligible Class Member, and shall relieve QAI from any other claims or liability to any other attorney or law firm for any attorneys' fees or costs to which any of them may claim to be entitled on behalf of any Eligible Class Member.

(iii)    An IRS Form 1099 shall be provided to Class Counsel for the payments made to Class Counsel. Each firm constituting Class Counsel shall be solely and legally responsible to pay any and all applicable taxes on the payment made to that firm.

h.    **Settlement Awards to Eligible Class Members.**    Settlement Awards shall be made to Eligible Class Members as set forth below.

## CALCULATION AND DISTRIBUTION OF SETTLEMENT AWARDS

17.    **Settlement Award Eligibility**. All Eligible Class Members shall be paid a Settlement Award from the Net Settlement Amount. Each Settlement Class Member's pro rata damages are set out in Exhibit C.

18.    Fifty percent (50%) of each Settlement Award to Eligible Class Members shall be treated as back wages, and accordingly, on each Settlement Award, the Settlement Administrator shall effectuate federal and applicable state income and employment taxes and withholdings as required by law with respect to 50% of each Settlement Award distributed, and the Settlement Administrator shall pay QAI's

9

customary share of all required federal and state payroll taxes on such amounts. Withholding shall be at the 25% supplemental wage tax rate. The remaining 50% of each Settlement Award shall be treated as non-wage penalties and liquidated damages, to be reported on an IRS Form 1099, and shall not be subject to federal or state withholdings. Each Eligible Class Member shall be solely and legally responsible to pay all taxes on the non-wage penalties and liquidated damages portion of the Settlement Award. QAI shall cooperate with the Settlement Administrator to provide payroll tax information as necessary for the Settlement Administrator to accomplish the payment of income and employment taxes and withholdings on the wage portion of each Settlement Award, and the IRS Form 1099 reporting for the non-wage portion of each Settlement Award.

19.     The Settlement Administrator shall provide counsel for the Parties with a final report of all proposed Settlement Awards, no more than fifteen (15) calendar days following the Notice Deadline.

20.     The Settlement Administrator shall mail all Settlement Awards to Eligible Class Members no later than 30 calendar days after the Funding date described in Paragraph 15.a. above. The Settlement Administrator shall then provide a written certification of such payments to counsel for the Parties within five (5) calendar days of mailing all Settlement Awards to Eligible Class Members.

21.     All Settlement Award checks shall remain valid and negotiable for one hundred eighty (180) days from the date of their issuance and may thereafter automatically be canceled if not cashed within that time, at which time the right to recover any Settlement Award will be deemed void and of no further force and effect. All funds from checks not cashed will revert to the Qualified Settlement Fund. The Settlement Administrator will include with each mailed check a letter stating that the check must be cashed or deposited within 180 days or it will be cancelled and deemed void and of no further effect.

22.     **Remaining Monies**. If at the conclusion of the 180-day check void period set forth above there are any monies remaining in the Qualified Settlement Fund, those remaining monies shall be paid to QAI.

23.     **No Claim Based Upon Distributions or Payments in Accordance with this Settlement Agreement**. No person shall have any claim against the Releasees, Plaintiffs, the Settlement Class Members, Class Counsel, or Defendants' Counsel based on distributions or payments made in accordance with this Settlement Agreement.

10

## MISCELLANEOUS

24.    **Defendants' Legal Fees.** Defendants' legal fees and expenses in the Kapolka Action shall be borne by Defendants.

25.    **Nullification of the Settlement Agreement.** In the event: (a) the Court does not approve the Settlement Agreement as provided herein; or (b) the Settlement Agreement does not become final for any other reason; this Settlement Agreement shall be null and void and the Parties shall be returned to their respective statuses as of the date immediately prior to the execution of this Settlement Agreement. If this occurs, the Parties shall proceed in all respects as if the Settlement Agreement had not been executed.

26.    **Inadmissibility of Settlement Agreement.** Except for purposes of settling the Kapolka Action, neither this Settlement Agreement, nor its terms, nor any document, statement, proceeding or conduct related to this Settlement Agreement, nor any reports or accounts thereof, shall be construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to the Parties, including, without limitation, evidence of a presumption, concession, indication or admission by any of the Parties of any liability, fault, wrongdoing, omission, concession or damage.

27.    **Computation of Time.** For purposes of this Settlement Agreement, if the prescribed time period in which to complete any required or permitted action expires on a Saturday, Sunday, or legal holiday (as defined by FED. R. CIV. P. 6(a)(6)), such time period shall be continued to the following business day.

28.    **Interim Stay of Proceedings.** The Parties agree to hold in abeyance all proceedings in the Kapolka Action, except such proceedings necessary to implement and complete the Settlement Agreement.

29.    **Tax Indemnification.** Eligible Class Members agree to pay any taxes found to be owed from payments made pursuant to this Settlement Agreement and to hold the Releasees harmless from any claims, assessments, demands, penalties and interest found to be owed as a result of any payment made pursuant to this Settlement Agreement. Eligible Class Members do not indemnify and hold harmless the Releasees from any claims, assessments, demands, penalties and interest found to be owed for time worked for QAI arising out of payments/compensation made in the ordinary course of business.

11

30. **Amendment or Modification.** This Settlement Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their successors in interest.

31. **Entire Settlement Agreement.** This Settlement Agreement constitutes the entire agreement among the Parties, and no oral or written representations, warranties or inducements have been made to any Party concerning this Settlement Agreement other than the representations, warranties, and covenants contained and memorialized in such documents. All prior or contemporaneous negotiations, memoranda, agreements, understandings, and representations, whether written or oral, are expressly superseded hereby and are of no further force and effect. Each of the Parties acknowledges that they have not relied on any promise, representation or warranty, express or implied, not contained in this Settlement Agreement.

32. **Authorization to Enter Into Settlement Agreement.** Counsel for all Parties are expressly authorized by the Parties whom they represent to enter into this Settlement Agreement and to take all appropriate action required or permitted to be taken by such Parties pursuant to this Settlement Agreement to effectuate its terms, and to execute any other documents required to effectuate the terms of this Settlement Agreement. The Parties and their counsel shall cooperate with each other and use their best efforts to effect the implementation of the Settlement Agreement.

33. **Binding on Successors and Assigns.** This Settlement Agreement shall be binding upon, and inure to the benefit of Plaintiffs, QAI, Releasees, and the Eligible Class Members and their heirs, beneficiaries, executors, administrators, successors, transferees, successors, assigns, or any corporation or any entity with which any party may merge, consolidate or reorganize.

34. **Counterparts.** This Settlement Agreement may be executed in one or more counterparts, including by facsimile or email. All executed counterparts and each of them shall be deemed to be one and the same instrument.

35. **Cooperation and Drafting.** The Parties have cooperated in the drafting and preparation of this Settlement Agreement; hence the drafting of this Settlement Agreement shall not be construed against any of the Parties. The Parties agree that the terms and conditions of this Settlement Agreement were negotiated at arms' length and in good faith by the Parties and reflect a settlement that was reached voluntarily based upon adequate information and sufficient discovery and after consultation with experienced legal counsel.

12

36.    **Jurisdiction of the Court.**  The Court shall retain jurisdiction with respect to the interpretation, implementation, and enforcement of the terms of this Settlement Agreement and all orders and judgments entered in connection therewith, and the Parties and their counsel submit to the jurisdiction of the Court for this purpose.

37.    **Confidentiality of Material Provided to Class Counsel.**  All materials provided by QAI to Class Counsel or the Settlement Administrator shall be kept confidential and used only for purposes of administering the settlement.

IN WITNESS WHEREOF, the Parties and their counsel have executed this Settlement Agreement as follows:

**NAMED**
**PLAINTIFF:** _____    Date: _____
Chad Kapolka (Jul 9, 2019)
            Chad Kapolka                        Jul 9, 2019

**NAMED**
**PLAINTIFF:** _____    Date: _____
Brett turrentine (Jul 9, 2019)
            Brett Turrentine                     Jul 9, 2019

**QAI:** _____    Date: _____

            Q'Max America Inc.
            / Anchor Drilling Fluids USA, LLC

13

36. **Jurisdiction of the Court.**  The Court shall retain jurisdiction with respect to the interpretation, implementation, and enforcement of the terms of this Settlement Agreement and all orders and judgments entered in connection therewith, and the Parties and their counsel submit to the jurisdiction of the Court for this purpose.

37. **Confidentiality of Material Provided to Class Counsel.**  All materials provided by QAI to Class Counsel or the Settlement Administrator shall be kept confidential and used only for purposes of administering the settlement.

IN WITNESS WHEREOF, the Parties and their counsel have executed this Settlement Agreement as follows:

**NAMED PLAINTIFF:** _____    Date: _____
                      Chad Kapolka

**NAMED PLAINTIFF:** _____    Date: _____
                      Brett Turrentine

**QAI:** _____    Date: July 8, 2019
         Q'Max America Inc.
         / Anchor Drilling Fluids USA, LLC

13

**AMENDMENT TO SETTLEMENT AGREEMENT AND RELEASE**

This Amendment to Settlement Agreement and Release ("Amendment") is intended to amend the Settlement Agreement and Release ("Settlement Agreement"), originally named and titled "CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE," between Plaintiffs Chad Kapolka and Brett Turrentine ("Plaintiffs") on the one hand; and (2) Anchor Drilling Fluids USA, LLC and Q'Max America Inc. (hereinafter collectively "QAI") on the other hand, (and all together, hereinafter, the "Parties") that was signed by Plaintiffs on July 9, 2019, and signed by QAI on July 8, 2019.

WHEREAS, the Parties now desire to amend and modify the Settlement Agreement pursuant to Paragraph 30 of the Settlement Agreement (Amendment or Modification) to remove the confidentiality provision of the Settlement Agreement;

WHEREAS, the Parties agree that the Settlement Agreement remains in full force and effect following the Parties' execution of this Amendment, except as expressly modified in this Amendment;

NOW, THEREFORE, in consideration of the mutual promises made herein and other good and valuable consideration, Plaintiffs and QAI agree as follows:

1.      The word "Confidential" is stricken from the name and title of the Settlement Agreement.

2.      Paragraph 13 of the Settlement Agreement titled "Confidentiality and Court Filings Shall be Under Seal" is stricken.

3.      The following sentence in the Settlement Consent Form attached to the Settlement Agreement is stricken: "I further agree that the settlement, and any recovery I receive are confidential, except as set forth in the Settlement Agreement."

4.       Except as specifically set forth herein, the Settlement Agreement and its terms and conditions remain in full force and effect and apply to this Amendment, and the Settlement Agreement is hereby ratified and confirmed in all respects, except that on or after the date of this Amendment, all references in the Settlement Agreement to "the Agreement," "the Settlement Agreement," "this Agreement," "this Settlement Agreement," "hereto," "hereof," "hereunder," "herein," or words of like import shall mean the Settlement Agreement as amended by this Amendment.

5.      This Amendment may be executed in one or more counterparts, including by facsimile or email.  All executed counterparts and each of them shall be deemed to be one and the same instrument.

*- Signatures on Next Page -*

4832-1283-1652.2 094097.1006

**NAMED
PLAINTIFF:** _Chad Kapolka (Sep 13, 2019)_    Date: Sep 13, 2019

Chad Kapolka


**NAMED
PLAINTIFF:** _Brett Turrentine (Sep 13, 2019)_    Date: Sep 13, 2019

Brett Turrentine


**QAI:** _____    Date: _____

Q'Max America Inc.
/ Anchor Drilling Fluids USA, LLC

2

**NAMED**
**PLAINTIFF:** _____    Date: _____
              Chad Kapolka


**NAMED**
**PLAINTIFF:** _____    Date: _____
              Brett Turrentine


**QAI:**       _____    Date: September 16, 2019
              Q'Max America Inc.
              / Anchor Drilling Fluids USA, LLC

4832-1283-1652.2 094097.1006

Exhibit A

## NOTICE OF COLLECTIVE ACTION AND PROPOSED SETTLEMENT

**TO:**      Certain current and former solids control consultants of: Anchor Drilling Fluids USA, LLC, or Q'Max America Inc. (collectively "QAI")

**SUBJECT:** The attached documents contain important information about your legal rights which may be affected by a settlement in a collective action case regarding your potential wages from QAI. The documents explain what to do if you want to participate in the settlement and what to do if you do not want to participate in the settlement. The information on this page only summarizes the attached documents. So, it is important that you read all the documents because they contain important instructions and information that are not all in this summary.

SUMMARY OF YOUR LEGAL RIGHTS AND
OPTIONS IN THIS COLLECTIVE ACTION SETTLEMENT

The Kapolka Action (i.e., the matter of *Chad Kapolka et al v. Anchor Drilling Fluids, USA, LLC et al.,* C.A. 2:18-cv-01007, in the United States District Court for the Western District of Pennsylvania, Pittsburgh Division) was filed by Chad Kapolka and Brett Turrentine alleging violations of the Fair Labor Standards Act (FLSA) as well as Pennsylvania and Ohio state law. Plaintiffs claimed they were entitled to unpaid overtime wages as a result of QAI's pay practices. While QAI does not admit any wrongdoing, Plaintiffs and QAI have reached a settlement releasing QAI. You may participate in the settlement by following the below procedures:

| You May: | Description: | Due Date: |
|---|---|---|
| Receive settlement money | Your estimated share of the settlement is _____. To receive your portion of the settlement, you must complete, sign, and submit the Settlement Consent Form. By submitting a completed Settlement Consent Form by the deadline, you will become a settlement participant and you will be releasing all of the federal, state and local law claims listed in the claim form. | The Settlement Consent Form must be submitted or postmarked by _____. |
| Exclude yourself from | If you do not want to participate in the settlement, do not submit a Settlement Consent | |

1

| the settlement | Form. You will not be waiving any rights or claims that you may have against QAI under federal, state, and local law. | |
|---|---|---|
| **For additional information or if you have questions regarding this settlement, you may contact Michael A. Josephson or Andrew W. Dunlap, counsel on behalf of the class, at 1-888-992-2990 or by email at info@mybackwages.com.** | | |

## I.  <u>SUMMARY OF TERMS OF THE PROPOSED SETTLEMENT</u>

Subject to Court approval, the terms of the Settlement are as follows:

1. QAI will allocate funds towards a "Gross Settlement Amount" to pay: (a) the proper and timely claims of Eligible Class Members; (b) Class Counsel's fees and litigation costs; and (c) Enhancement Awards to the Class Representatives.

2. After deduction from the Gross Settlement Amount for Class Counsel's attorneys' fees and litigation costs, settlement administrator costs, and Enhancement Awards, certain funds will remain from which QAI will make a Settlement Payment to each Eligible Class Member who submits a timely and valid Settlement Consent Form and who worked for QAI as an independent contractor solids control technician or as an employee solids control technician during the Class Period. Your settlement payment is based on the weeks worked, rates of pay and compensation received during the Settlement Class Period.

3. The parties have agreed to an approach that they believe fairly allocates the Net Settlement Amount between and among the Settlement Class Members.  On _____, the Court approved this settlement.

4. The Court has approved an award of attorneys' fees and costs to be paid from the Gross Settlement Amount.  In addition, the Court has authorized Enhancement Awards to Class Representatives Chad Kapolka  and Brett Turrentine. The Court has also approved settlement administration costs.

5. Each individual who submits a timely and valid Settlement Consent Form is deemed to fully and finally release and discharge Anchor Drilling Fluids USA, LLC, Anchor Drilling Fluids, USA, Inc., Q'Max Solutions Inc., Q'Max America Inc., Calumet GP, LLC, and Calumet Specialty Products Partners, L.P., and their past, present and future parent companies, subsidiaries, affiliates, agents, employees, owners, members, shareholders, divisions, officers, directors, partners, benefit plans, co-employers, joint employers, indemnitors, indemnitees, contractors, vendors, investors, legal

2

representatives, accountants, trustees, executors, administrators, real or alleged alter egos, predecessors, successors, transferees, assigns, and insurers from any and all applicable federal, state, or local wage and hour claims, obligations, demands, actions, rights, causes of action, and liabilities against Anchor Drilling Fluids USA, LLC, Anchor Drilling Fluids, USA, Inc., Q'Max Solutions Inc., Q'Max America Inc., Calumet GP, LLC, and Calumet Specialty Products Partners, L.P., (or their affiliated persons or entities set forth above), including (a) all claims asserted or which could have been asserted in the Kapolka Action (as defined above) which arose under the facts alleged and/or applicable state or local wage and hour laws and regulations; (b) all claims under applicable state or local laws and regulations for the failure to pay any type of overtime compensation or other wages (including late payments of wages or business expenses); (c) all claims which arose under any applicable state or local laws or regulations for the failure to provide or pay for meal periods and/or rest periods; (d) all claims under applicable state or local laws or regulations, including but not limited to alleged recordkeeping violations, stemming from or based on the alleged misclassification under the FLSA or state or local law; and (e) all claims for penalties or additional damages which allegedly arise from the claims described in (a) through (d) inclusive above under applicable state or local law.

## II.    HOW YOU CAN PARTICIPATE IN THIS SETTLEMENT

### 1.    Applicable Time Periods:

Your Settlement Consent Form must be received or postmarked by _____[60 Days after the mailing date]_____.If you do nothing, you will not receive back wages and will not compromise any of your claims against QAI.

### 2.    How To Participate And Receive Compensation:

You must complete, sign, and return the enclosed Settlement Consent Form to the Settlement Administrator below. Your Claim Form must be received no later than _____**[60 Days after the mailing date]**_____. Late or incomplete Claim and Consent to Join Settlement Forms may or may not be honored at the sole discretion of QAI.

The Settlement Consent Form should be sent in the enclosed postage-paid envelope, or in an envelope addressed as follows:

Overtime Lawsuit Against
Anchor Drilling Fluids, USA, LLC and Q'Max America, Inc.
c/o ILYM

3

Address
Fax
E-mail

If you lose or misplace your settlement papers, a copy of the Settlement Consent Form may also be obtained by contacting the Settlement Administrator at the above address.

**3.    What If You Do Nothing:**

Individuals who do not return the Settlement Consent Form will not receive any money from this Settlement.

| III. | TAXES |
|---|---|

For tax reporting purposes, any payments made pursuant to the Settlement shall be allocated as follows: (a) fifty percent (50%) shall be deemed payment in settlement of claims for unpaid wages; and (b) fifty percent (50%) shall be deemed payment in settlement of claims for penalties, liquidated damages, interest, and all other non-wage recovery. With respect to the portion of payment allocated to the settlement of claims for unpaid wages, such portion will be subject to required withholdings and deductions by QAI and will be reported as wage income on a Form W-2 to be issued by QAI, and such other state or local tax reporting forms as may be required by law. With respect to the portion of payment allocated to the settlement of claims for non-wage recovery, such amounts will not be subject to withholding or deduction and will be reported as non-wage income on a Form 1099 or equivalent to be issued by QAI and such other state or local tax reporting forms as may be required by law.

If you have any questions regarding the tax treatment of any payments pursuant to the Settlement, you should consult your own tax advisor.

4

## IV.    ADDITIONAL INFORMATION

This Notice only summarizes the Kapolka Action, the Settlement, and other related matters. For more information, you may review the Court's files. The pleadings and other records in the Litigation may be examined at the Office of the Clerk of the United States District Court, located at the U.S. Post Office and Courthouse Building, Suite 10160, Tenth Floor, Pittsburgh, PA.

Any questions regarding this Notice or the enclosed forms should be directed to Class Counsel:

Michael A. Josephson
Andrew W. Dunlap
JOSEPHSON DUNLAP
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Phone: 1-888-992-2990
Fax: 713-352-3300
E-mail: info@mybackwages.com

If your address changes or is different from the address on the envelope enclosing this Notice, please promptly notify the Settlement Administrator.

FIRMWIDE:165348137.1 094097.1006

Exhibit B

## SETTLEMENT CONSENT FORM

By returning this Settlement Consent Form and signing below, I hereby verify that I have read and understood the settlement terms and conditions arising out of the putative collective action lawsuit against Anchor Drilling Fluids USA, LLC and Q'Max America Inc. for the damages associated with the alleged violations of the Fair Labor Standards Act and Pennsylvania and Ohio law. I consent to opt-in to and participate as a settlement class member to recover _____, less applicable taxes, to which I am entitled. I understand that by signing this Settlement Consent Form, I release any and all wage and hour claims arising out of the payment practices at issue through this collective action.

PLEASE PRINT THE FOLLOWING INFORMATION:

Name:_____    Date of Birth:_____

Address:_____    Telephone No.:_____

E-mail: _____    Last Four of SSN: _____

Signature: _____    Date:_____

**The above information will be kept confidential and shall only be used for the identification of and distribution to settlement class members.**

**Return this form by _____ to:**

Unpaid Overtime Lawsuit Against
Anchor Drilling Fluids, USA, LLC and Q'Max America, Inc.
c/o ILYM Group
Address
Fax
E-mail

1

FIRMWIDE:164419972.7 094097.1006