IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHAD KAPOLKA AND BRETT TURRENTINE, Individually and on behalf of all Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> ANCHOR DRILLING FLUIDS USA, LLC and Q'MAX AMERICA, INC. <br><br> Defendants. | 2:18-cv-01007-NR |

**OPINION**

**J. Nicholas Ranjan, United States District Judge**

Before the Court is Plaintiffs' Amended Motion to Approve Collective Action Settlement, [ECF 50], requesting that the Court approve the parties' agreement to settle Plaintiffs' claims under the Fair Labor Standards Act ("FLSA"). [ECF 50]. The parties have revised their proposed settlement agreement to address concerns raised by the Court in its September 3, 2019, order. [ECF 49].[1] After careful consideration, the Court will approve the amended agreement.

**I.      Discussion & Analysis**

"Because of the public interest in FLSA rights, there are only two ways that FLSA claims can be settled or compromised by employees[.]" *Adams v. Bayview Asset Mgmt., LLC*, 11 F. Supp. 3d 474, 476 (E.D. Pa. 2014). The first is a compromise supervised by the Department of Labor under 29 U.S.C. § 216(c). *Id.* The second is a "district court-approved compromise" under 29 U.S.C. § 216(b). *Id.* This case falls into the latter bucket, and Plaintiffs request the Court's approval of the proposed settlement agreement attached to their motion as Exhibit 1. [ECF 50-1].

"When parties present to the district court a proposed [FLSA] settlement, the district court may enter a stipulated judgment if it determines that the compromise reached is a fair and

---

[1] In its previous order, the Court informed the parties that it intended to reject their original settlement agreement because it contained a confidentiality provision and was filed under seal. [ECF 49 at p. 1]; *see Mesta v. Citizens Bank, N.A.*, No. CIV. A. 14-703, 2015 WL 4039358, at *2 (W.D. Pa. 2015) ("Numerous courts have been asked to consider and approve the terms of an FLSA settlement agreement and the vast majority of these courts have found that the agreement should not be filed under sealed."); *Wesimantle v. Jali*, No. 2:13-CV-01087, 2015 WL 1866190, at *2 (W.D. Pa. 2015) (collecting cases). The parties' amended settlement agreement includes an addendum that removes the offending confidentiality language from the agreement. These changes have adequately addressed the Court's concern.

reasonable resolution of a bona fide dispute over FLSA provisions rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Cuttic v. Crozer-Chester Med. Ctr.*, 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012) (internal quotation marks omitted); *see also Vargas v. Gen. Nutrition Centers, Inc.*, No. 2:10-cv-867, 2015 WL 4155449, at *1 (W.D. Pa. Mar. 20, 2015) (same). The FLSA's provisions "are mandatory and not subject to negotiation and bargaining between employers and employees because allowing waiver by employees or releases of employers would nullify the purposes of the act." *Deitz v. Budget Renovations & Roofing, Inc.*, No. 4:12-CV-0718, 2013 WL 2338496, at *2 (M.D. Pa. May 29, 2013); *see Lynn's Food Stores, Inc. v. United States Dept. of Labor*, 679 F.2d 1350, 1352 (11th Cir. 1982) ("Recognizing that there are often great inequalities in bargaining power between employers and employees, Congress made the FLSA's provisions mandatory[.]").

Thus, "if the Court determines that the settlement concerns a 'bona fide dispute,' it will conduct a two-part fairness inquiry to ensure that (1) the settlement is fair and reasonable for the employee(s), and (2) the agreement furthers the FLSA's implementation in the workplace." *Howard v. Philadelphia Hous. Auth.*, 197 F. Supp. 3d 773, 777 (E.D. Pa. 2016). When the proposed settlement results from arm's length negotiation between competent counsel, the Court begins with a "strong presumption in favor of finding [the] settlement fair[.]" *Crabtree v. Volkert, Inc.*, No. CIV.A. 11-0529-WS-B, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013).

Here, the parties have agreed to settle Plaintiffs' claims in exchange for Defendants' payment of $1,105,000.00. [ECF 50; ECF 50-1]. From this gross settlement fund, counsel seeks to deduct $386,750.00 in attorneys' fees, $6,727.70 in costs and expenses,[2] up to $7,000.00 in settlement administrative costs, and $5,000.00 "service" or "enhancement" payments to each of the two named plaintiffs. After applying these deductions, the result is a net settlement award of $694,522.30. This net award will be distributed among opt-in class members on a pro rata basis, dependent on an analysis of the number of weeks of overtime pay at issue for each class member.

For the following reasons, the Court is persuaded that this agreement represents a fair and reasonable settlement of a bona fide FLSA dispute, and that the proposed resolution will further the aim of implementing the FLSA in the workplace.

**A. Bona Fide Dispute**

First, the Court must determine whether the proposed settlement would resolve a "bona fide" dispute under the FLSA. In this context, "[a] dispute is 'bona fide' where it involves factual issues rather than legal issues such as the statute's coverage and applicability." *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 530 (E.D. Pa. 2016) (internal quotation marks omitted). As a result, the Court needs to "consider the substantive allegations and determine whether factual issues, specific to these parties, are actually in dispute." *Deitz*, No. 4:12-CV-0718, 2013 WL 2338496, at *3. "In essence, for a bona fide dispute to exist, the dispute must fall within the

---

[2] This amount represents counsel's costs incurred to date. The parties' settlement agreement will permit counsel to deduct its actual costs up to $20,000.00. [ECF 50-1 at ¶ 16(c)(i)].

2

contours of the FLSA and there must be evidence of the defendant's intent to reject or actual rejection of that claim when it is presented." *Kraus*, 155 F. Supp. 3d at 530.

Plaintiffs have alleged that Defendants misclassified them, along with the other putative class members, as independent contractors, and wrongfully denied them overtime compensation on that basis. [ECF 1 at ¶¶ 3-8; 26-53]. These allegations "fall within the contours of the FLSA." *Kraus,* 155 F. Supp. 3d at 530; *see* 29 U.S.C. § 207.

The record also contains clear "evidence of the defendant's intent to reject or actual rejection" of Plaintiffs' claims. *Id.* Defendants have, in fact, filed an answer denying many of Plaintiffs' key factual allegations. [ECF 11 at ¶¶ 3-8; 26-53]. Additionally, Plaintiffs' counsel has submitted an affidavit stating that Defendants "disagreed vehemently with many of the assertions in the [c]omplaint," and that Defendants "repeatedly argued that [they] did not employ Plaintiff," but that "if [they] did, Plaintiff was exempt from the FLSA's requirements because of the executive, administrative, professional, and/or highly compensated employee exceptions." [ECF 50-2 at ¶¶ 15]. Counsel also states that Defendants "argued [Plaintiffs'] damages should be sharply limited because [Defendants] acted in conformity with near uniform industry practice, without complaint, for years." [ECF 50-2 at ¶ 26].

As a result, the record establishes that resolution of many of the relevant legal issues would turn on the underlying, disputed facts surrounding, at a minimum, (i) Plaintiffs' employment; (ii) Defendants' pay practices; (iii) Defendants' state of mind, *i.e.*, Defendants' good or bad faith in establishing the challenged pay practices, and; (iv) industry custom. The Court therefore finds that the proposed settlement resolves a "bona fide" dispute of "factual issues rather than legal issues." *Kraus,* 155 F. Supp. 3d at 530.

### B. Fair & Reasonable Settlement

Next, the Court must assess whether the proposed settlement is fair and reasonable. In most cases, this standard is not exacting. Indeed, "[i]f the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable." *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1227 (M.D. Fla. 2009); *see Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) ("[C]ourts typically regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement."). Only "[r]arely will the Court be in a position to competently declare that such a settlement is 'unreasonable.'" *Bonetti*, 715 F. Supp. 2d at 1227; *see also Austin v. Pennsylvania Dep't of Corr.,* 876 F. Supp. 1437, 1472 (E.D. Pa. 1995) ("In determining the fairness of a proposed settlement, the Court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class.").

Here, both parties are represented by experienced counsel who frequently litigate and settle FLSA and other employment law claims in both state and federal court. [ECF 50-2 at ¶¶ 5-9, 13-14; ECF 52 at ¶¶ 6-7]. Additionally, the parties employed an experienced mediator to assist them in negotiating their settlement and reached their initial agreement to settle through the

mediation process. [ECF 50-2 at ¶ 20].[3] The Court thus begins with a strong presumption that the settlement counsel have forged through extensive, adversarial negotiation is reasonable.

Even so, the Court has to review the details of the proposed agreement to ensure that it is fair. In analyzing proposed FLSA settlements, "district courts have relied on the factors set out by the Third Circuit for approving class action settlements pursuant to Federal Rule of Civil Procedure 23." *Brown v. TrueBlue, Inc.*, No. 1:10-CV-00514, 2013 WL 5408575, at *2 (M.D. Pa. Sept. 25, 2013). But "unlike its role in Rule 23 actions to serve as caretaker and protect absent class members, the court in FLSA class actions serves as gatekeeper to ensure that the parties are not negotiating around the clear FLSA requirements via settlement." *Acevedo v. Brightview Landscapes, LLC*, No. CV 3:13-2529, 2017 WL 4354809, at *13 (M.D. Pa. Oct. 2, 2017) (internal quotation marks omitted); *see Bredbenner v. Liberty Travel, Inc.*, No. CIV.A. 09-1248 MF, 2011 WL 1344745, at *18 (D.N.J. Apr. 8, 2011) ("Unlike a traditional class action under Rule 23, potential class members in an FLSA collective action must affirmatively opt-in to be bound by the judgment. … Their failure to do so does not prevent them from bringing their own suit at a later date.").

Thus, while the factors used to evaluate Rule 23 class action settlements provide a framework for the Court's analysis, rigid application of those factors is neither required nor appropriate in the FLSA context. *See Deitz*, No. 4:12-CV-0718, 2013 WL 2338496, at *5 ("Although courts have utilized Fed. R. Civ. P. 23 in evaluating the fairness of a proposed settlement under FLSA collective action suits, the Rule does not control such actions and the Court may use its discretion in fashioning appropriate standards for approving settlement of actions brought under 29 U.S.C. § 216(b).").

As set forth by the Third Circuit in *Girsh v. Jepson*, the Rule 23 factors are

1) the complexity, expense, and likely duration of litigation;

2) the reaction of the class to the settlement;

3) the stage of proceedings and amount of discovery completed;

4) the risks of establishing liability;

5) the risks of establishing damages;

6) the risk of maintaining the class through trial;

7) the ability of the defendants to withstand a greater judgment;

8) the range of reasonableness of the settlement fund in light of the best possible recovery; and

9) the range of reasonableness of the settlement fund to a possible recovery in light of the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).

---

[3] The parties attended mediation with Carole Katz on January 22, 2019. [ECF 35].

Here, the Court has considered and weighed each of the *Girsh* factors, and determined that they favor approving the parties' settlement agreement.

1. <u>Complexity, Expense, and Likely Duration.</u> The first *Girsh* factor asks the Court to evaluate the complexity, expense, and likely duration of litigation. Generally, "[c]ases requiring great expenditures of time, money, and other resources on behalf of the parties and the court" are "good candidates for settlement." *Deitz*, No. 4:12-cv-0718, 2013 WL 2338496, at *5. As a result, the greater the apparent complexity and likely expense associated with litigating a case to its conclusion, the more likely it is that the Court will find a proposed settlement to be fair to employees and the public. *See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 318 (3d Cir. 1998).

This case is not all that complex when compared to other class or collective actions, but neither is it uniquely straightforward. Moreover, while the parties have already completed some informal discovery, Plaintiffs assert, and the Court does not doubt, that "both sides would require substantial additional discovery including a high number of costly depositions in order to place this case in a trial posture." [ECF 50 at p. 7]; *c.f. Craig v. Rite Aid Corp.*, No. 4:08-CV-2317, 2013 WL 84928, at *9 (M.D. Pa. Jan. 7, 2013) ("With respect to the likely duration of this litigation, counsel for the parties aver, and we have no reason to doubt, that even the most procedurally advanced of these consolidated cases would require additional and substantial discovery in order to place the case in a trial posture.").

Thus, because settlement of this case would conserve substantial time, expense, and judicial resources, the Court finds that the first *Girsh* factor favors approving the parties' agreement.

2. <u>Reaction of Class to Settlement.</u> The second *Girsh* factor asks whether any members of the "class" have objected or otherwise reacted to the proposed settlement. But this factor is "not directly applicable" in the context of an FLSA collective action, where the settlement class will consist of voluntary opt-in plaintiffs, "all of whom wish to settle this matter in accordance with the terms of the proposed settlement agreement." *Deitz*, No. 4:12-CV-0718, 2013 WL 2338496, at *6.

In any event, Plaintiffs represent that there have been no objections to the proposed settlement. [ECF 50 at p. 10]. As the docket reflects, no objections been filed with the Court either. For that reason, if the second *Girsh* factor applies at all, the Court finds that it favors approval of the settlement.

3. <u>Stage of Proceedings & Amount of Discovery Completed.</u> The third *Girsh* factor requires the Court to examine the stage of proceedings and amount of discovery completed before settlement, to determine whether the parties have an "adequate appreciation of the merits of the case before negotiating." *In re Prudential Ins. Co.*, 148 F.3d at 319. This requirement ensures that there is "no risk that self-interested counsel is seeking a resolution of the claims on terms that are most beneficial to counsel alone without regard for the interests of the parties." *Deitz*, No. 4:12-CV-0718, 2013 WL 2338496, at *6.

Plaintiffs represent that the parties engaged in significant, informal discovery ahead of mediation to help them value the claim. Of particular note, Defendants "provided substantial compensation data, pay policies/practices, and personal information" which, when "coupled with the class members' general work schedules," allowed counsel to "formulate a detailed assessment of the potential damages for the entire class." [ECF 50-2 at ¶ 17]. While the parties did not engage in formal discovery, such as depositions, the documents that they informally exchanged are of a nature to provide them with an "appreciation of the merits of the case."

As a result, the Court finds that counsel for both parties had an adequate appreciation of the merits of the case before negotiating, and that the third *Girsh* factor therefore mostly favors approval (and certainly does not cut against approval).

4. <u>Risks of Establishing Liability & Damages and of Maintaining the "Class."</u> The fourth *Girsh* factor requires the Court to "survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefit of an immediate, certain settlement." *Deitz*, No. 4:12-CV-0718, 2013 WL 2338496, at *6; *In re Prudential Ins. Co.*, 148 F.3d at 319. But "[t]he risk of maintaining the class throughout trial is not applicable" where, as here, "there is no such putative class that may be decertified or modified at any time during the litigation." *Deitz*, No. 4:12-CV-0718, 2013 WL 2338496, at *6. Thus, the Court focuses solely on the risks associated with establishing liability and damages.

Here, counsel acknowledges that Plaintiffs would face substantial risk if the case proceeds. Besides the inherent risks that are "always … associated with litigation of wage and hour disputes involving large sums of money," counsel admits that Defendants have asserted multiple legal defenses which, if established, "would all but cripple Plaintiffs' case." [ECF 50-2 at ¶ 25]. Counsel also states that, beyond merely contesting liability, Defendants sought to "sharply limit" Plaintiffs' damages, based on the argument that Defendants had "acted in conformity with near uniform industry practice, without complaint, for years." [*Id.* at ¶26]. Thus, Plaintiffs face the risk of a limited recovery, even if liability were otherwise successfully established. Moreover, substantial expert and fact discovery would likely be needed to determine what the industry pay practice is and whether Defendants "acted in conformity" with it.

Defendants, of course, face risk, as well—the risk of being held liable to Plaintiffs at trial for an amount that would presumably be greater than the $1,105,000.00 settlement they have agreed to pay. *See Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 720 (E.D. La. 2008) ("[A] settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution.").

For these reasons, the Court finds that both parties faced real risks associated with liability and damages, and were aware of and able to account for those risks while negotiating this settlement. So this factor, too, favors approval.

5. <u>Ability of Defendants to Withstand a Greater Judgment.</u> The fifth *Girsh* factor "considers whether the defendant could withstand a judgment for an amount significantly greater than the proposed settlement." *Deitz*, No. 4:12-CV-0718, 2013 WL 2338496, at *7. That said, a

defendant's ability or inability to withstand a greater judgment is "irrelevant" when "the record includes no evidence related to the [d]efendant's ability to pay an amount greater than the settlement, nor … any indication that this factored into settlement negotiations." *Id.*; *see, e.g.*, *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 538 (3d Cir. 2004) ("The District Court found that this factor neither favored nor disfavored settlement because of a lack of evidence in the record about DuPont's ability to pay or whether such a consideration factored into the settlement negotiations. … We see no error here.").

This is such a case. There is no indication in Plaintiffs' motion, or the record as a whole, that the parties' considered Defendants' ability to pay while negotiating the proposed settlement. As a result, this factor does not appear to be relevant here.

      6.     <u>Reasonableness of Settlement.</u> Finally, the sixth *Girsh* factor requires the Court to broadly assess the "reasonableness" of the settlement by balancing Plaintiffs' best possible recovery against the risks of litigation. "Ideally, this assessment should include comparing the value of damages that [the] plaintiffs would likely recover if successful, offset by the risk of not prevailing, with the amount of the proposed settlement." *Deitz*, No. 4:12-CV-0718, 2013 WL 2338496, at *7. But where "calculating the 'best possible recovery' for the plaintiffs is exceedingly speculative, the reasonableness of the settlement can be fairly judged by looking at the nature of the settlement itself and taking into consideration the risks of litigation." *Id.*

The Court has weighed the "risks of litigation" above, and determined that both parties face substantial risk if this case were to proceed.

As for the "nature of the settlement itself," the Court finds it particularly relevant that the parties' reached their proposed agreement through arm's length negotiations between competent counsel; counsel experienced in this precise area of the law and intimately familiar with this case. Also, of note, the parties reached their initial agreement to settle not through backroom dealings between counsel, but through mediation with a prominent and experienced neutral. [ECF 35; ECF 50-2 at ¶ 20]. These circumstances suggest reasonableness and neutrality, not incompetence or self-dealing.

Furthermore, while the Court's ability to assess the merits of Plaintiffs' claims at this early stage is limited, the settlement amount does not strike the Court as either shockingly large or unusually small for a collective action of this nature. Finally, the parties' agreement to distribute the settlement to opt-in class members on a pro rata basis—dependent upon an analysis of the weeks of overtime at issue for each settlement class member—is a reasonable basis for distributing the award to the settlement class.

As a result, the Court sees nothing in "the nature of the settlement," *Id.*, to suggest that this is the rare case in which an agreement negotiated by competent counsel in an adversarial context is nevertheless facially unreasonable. *See Bonetti*, 715 F. Supp. 2d at 1227 ("If the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable.").

For all the reasons discussed above, the Court finds that the proposed settlement represents a fair and reasonable resolution of a bona fide dispute under the FLSA.

### C. Attorneys' Fees

"The Court must also separately assess the reasonableness of plaintiffs' attorney's fees, even when the fee is negotiated as part of a settlement rather than judicially determined." *Lliguichuzhca*, 948 F. Supp. 2d at 366; *see In re Chickie's & Pete's Wage & Hour Litig.*, No. CIV.A. 12-6820, 2014 WL 911718, at *4 (E.D. Pa. Mar. 7, 2014) ("In FLSA cases, judicial approval of attorneys' fees is necessary to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement.") (internal quotation marks omitted).

"Percentage of recovery is the prevailing method used by courts in the Third Circuit for wage and hour cases." *Kraus*, 155 F. Supp. 3d at 533. In determining what constitutes a reasonable percentage fee award, a district court must consider several factors, "many of which are similar to the *Girsh* factors" discussed above. *In re AT & T Corp.*, 455 F.3d 160, 165 (3d Cir. 2006). Those factors are:

1) the size of the fund created and the number of beneficiaries;

2) the presence or absence of substantial objections by members of the class to the settlement terms or the fees requested by counsel;

3) the skill and efficiency of the attorneys involved;

4) the complexity and duration of the litigation;

5) the risk of nonpayment;

6) the time devoted to the case by plaintiffs' counsel;

7) the awards in similar cases;

8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations;

9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and;

10) any innovative terms of settlement.

*In re Diet Drugs*, 582 F.3d 524, 541 (3d Cir. 2009); *see also Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000) (identifying factors 1-7); *In re Prudential Ins. Co.*, 148 F.3d at 338-40 (identifying factors 7-10).

These factors "need not be applied in a formulaic way" and "in certain cases, one factor may outweigh the rest.'" *In re AT & T Corp.*, 455 F.3d at 166. Courts in this Circuit also customarily "cross-check the percentage award" derived from these factors "against the 'lodestar' award method, which is normally employed in statutory fee-award cases." *Rouse v. Comcast Corp.,* No. CIV.A. 14-1115, 2015 WL 1725721, at *11 (E.D. Pa. Apr. 15, 2015); *see,*

*e.g. Brumley v. Camin Cargo Control, Inc.*, No. CIV.A. 08-1798 JLL, 2012 WL 1019337 (D.N.J. Mar. 26, 2012) (applying lodestar cross-check of percentage fee award in FLSA collective action); *Brown*, No. 1:10-CV-00514, 2013 WL 5408575, at *3 (declining to approve requested attorneys' fees in FLSA case "without any evidence supporting counsel's time calculation and hourly rate.").

The Court has already fully considered two of these factors—the lack of objections and the complexity of this litigation—as part of its *Girsh* analysis above, and found that they favor approving the settlement. Based on the same reasoning, those factors favor approving counsel's requested attorneys' fees as well.

For the reasons below, the Court finds that the remaining factors, as well as the results of a "lodestar cross-check," also suggest that the requested fee award is reasonable.

1. <u>The Size of the Fund Created and Number of Beneficiaries.</u> The first factor, the size of the fund created and number of beneficiaries, supports the request for attorneys' fees.

"Generally, the appropriate percentage awarded to class counsel decreases as the size of the fund increases." *Acevedo*, No. CV 3:13-2529, 2017 WL 4354809, at *17; *see Bredbenner*, No. CIV.A. 09-1248 MF, 2011 WL 1344745, at *19; *Keller v. TD Bank, N.A.,* No. CIV.A. 12-5054, 2014 WL 5591033, at *14 (E.D. Pa. Nov. 4, 2014); *see also In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 736 (3d Cir. 2001) ("[D]istrict courts setting attorneys' fees in cases involving large settlements must avoid basing their awards on percentages derived from cases where the settlement amounts were much smaller."). This rule of thumb is "premised on the belief that increases in recovery are usually the result of the size of the class and not a result of the efforts of counsel." *Acevedo*, No. CV 3:13-2529, 2017 WL 4354809, at *17.

As discussed, the parties' proposed agreement would establish a gross settlement fund of $1,105,000.00 and, after subtracting the proposed percentage fee award and other costs, a net settlement award of $694,859.77. The agreement provides for distribution of this net award to all opt-in class members on a pro rata basis.

The Court cannot accurately assess the "number of beneficiaries" here, because the parties have settled before certification of any class and have not provided the Court an estimate of the number of individuals expected to opt in to the proposed settlement. All the same, a 35% fee award is reasonable given the total size of the fund.

"In this Circuit, the percentage of the recovery award in FLSA common fund cases ranges from roughly 20–45%." *Mabry v. Hildebrandt*, No. CV 14-5525, 2015 WL 5025810, at *4 (E.D. Pa. Aug. 24, 2015); *see Acevedo*, No. CV 3:13-2529, 2017 WL 4354809, at *18 ("[C]ourts have approved attorneys' fees in FLSA collective and class action settlement agreements 'from roughly 20-45%' of the settlement fund.").

Of particular relevance here, "[f]ee awards ranging from thirty to forty-three percent have been awarded in cases with funds ranging from $400,000 to $6.5 million … which are comparatively smaller than many." *Erie Cty. Retirees Ass'n v. Cty. of Erie, Pennsylvania*, 192 F. Supp. 2d 369, 381 (W.D. Pa. 2002); *see Martin v. Foster Wheeler Energy Corp.*, No. 3:06-CV-

9

0878, 2008 WL 906472, at *5 (M.D. Pa. Mar. 31, 2008) ("The Settlement Fund in this case amounts to [$1.64 million]. District courts within the Third Circuit have typically awarded attorneys' fees of 30% to 35% of the recovery, plus expenses, in settlements of this size."); *Devlin v. Ferrandino & Son, Inc.*, No. CV 15-4976, 2016 WL 7178338, at *9 (E.D. Pa. Dec. 9, 2016) ("An award of approximately one-third of the common fund as an attorney's fee to class counsel is common in FLSA class action settlements.").

The Court's own review of settlements approved by district courts in this Circuit supports these observations. *See e.g:*

| Cases | Fee % | Total Settlement |
|---|---|---|
| *Arrington v. Optimum Healthcare IT, LLC*, No. CV 17-3950, 2018 WL 5631625 (E.D. Pa. Oct. 31, 2018) | 33.3% | $4,900,000.00 |
| *Devlin v. Ferrandino & Son, Inc.*, No. CV 15-4976, 2016 WL 7178338 (E.D. Pa. Dec. 9, 2016) | 33.3% | $1,550,000.00 |
| *Cikra v. LaMi Prod., LLC*, No. 2:15-CV-06166-WB, 2016 WL 9776077 (E.D. Pa. Nov. 10, 2016) | 28.87% | $1,550,000.00 |
| *Lyons v. Gerhard's Inc.*, No. CIV.A. 14-06693, 2015 WL 4378514 (E.D. Pa. July 16, 2015) | 33.3% | $153,500.00 |
| *Rouse v. Comcast Corp.*, No. CIV.A. 14-1115, 2015 WL 1725721 (E.D. Pa. Apr. 15, 2015) | 35% | $453,900.00 |
| *Dino v. Pennsylvania*, No. 1:08-CV-01493, 2013 WL 6504749 (M.D. Pa. Dec. 11, 2013) | 31% | Unspecified, but appx. $480,000.00 |
| *Erie Cty. Retirees Ass'n v. Cty. of Erie, Pennsylvania*, 192 F. Supp. 2d 369 (W.D. Pa. 2002) | 38% | $350,000.00 |
| *In re Valuevision Int'l Inc. Sec. Litig.*, 957 F. Supp. 699 (E.D. Pa. 1997) | 34.27% | $926,136.99 |
| *Seagraves v. Range Res. Corporation*, 2:17-cv-1009-JFC (W.D. Pa. Oct. 16, 2018) (ECF No. 40) | 33.3% | $3,925,000.00 |

The 35% award requested here is within this ballpark range, even if at the higher end. The Court is also mindful that "[w]here the fees are set as part of negotiations between the parties, there is a greater range of reasonableness for approving attorney's fees." *Lliguichuzhca*, 948 F. Supp. 2d at 366. On balance, then, the percentage fee negotiated by the parties does not appear to be unreasonable relative to the "size of the fund created."

2. <u>Skill and Efficiency of Attorneys' Involved.</u> Plaintiffs are represented by counsel with extensive experience in this particular area of law. Indeed, lead counsel states that he has served as attorney of record in over 1,000 "wage and hour" class or collective actions, individual cases, and arbitrations. [ECF 52 at ¶ 6].

What's more, the outcome obtained by counsel here—a settlement of more than $1,000,000.00—represents "a significant benefit in the face of the many legal and factual risks posed by litigation." *Bredbenner*, No. CIV.A. 09-1248 MF, 2011 WL 1344745, at *19. Counsel "undertook significant risk to achieve a substantial settlement amount, and should not be penalized for settling the case early in the litigation." *Arrington v. Optimum Healthcare IT, LLC*, No. CV 17-3950, 2018 WL 5631625, at *10 (E.D. Pa. Oct. 31, 2018). To the contrary, the early

10

settlement of potentially costly litigation is commendable. Considerable judicial time and resources were no doubt conserved by the parties' resolution of this case before dispositive motions or trial.

As a result, the Court finds that Plaintiffs have competent counsel whose considerable skill and experience likely facilitated the early and efficient settlement of this matter. The "skill and efficiency" of Plaintiffs' counsel therefore favors the requested fee award.

3. <u>Risk of Nonpayment.</u> Counsel represented Plaintiffs on a contingent basis and invested considerable time and resources litigating this case and negotiating with Defendants, all with no guarantee of recovery. The Court therefore finds that counsel incurred significant risk of nonpayment, which favors approving the fee award. *See, e.g.*, *Brumley*, No. CIV.A. 08-1798 JLL, 2012 WL 1019337, at *11 ("The Court also finds that Plaintiffs' counsel risked non-payment during the period of their representation since they represented Plaintiffs entirely on a contingent basis … Given these considerations, the Court finds that the risk of non-payment weighs in favor of the requested fee.").

4. <u>Amount of Time Devoted by Plaintiffs' Counsel.</u> In response to this Court's October 10, 2019 order, [ECF 51], counsel filed a supplemental declaration detailing the time devoted to this matter by Plaintiffs' counsel and their support staff. [ECF 52]. The declaration shows counsel and their staff have devoted about 300 hours to this matter, rendering services valued at $141,870.00. [*Id.* at ¶¶ 8-9]. This work included (i) drafting pleadings, discovery requests, and other filings; (ii) participating in court hearings; (iii) negotiating with Defendants, (iv) preparing for and engaging in mediation, and; (v) reviewing discovery. [*Id.* at ¶ 7]. The declaration further estimates that counsel will devote another 20 hours, valued at $10,500.00, to finalize this matter after the Court approves the settlement. [*Id.* at ¶ 10].

The Court finds that this devotion of time and effort was substantial, and thus favors approving the percentage award. *See, e.g.*, *Rouse,* No. CIV.A. 14-1115, 2015 WL 1725721, at *13 (concluding that "the time devoted to this case was significant" where counsel devoted 221.45 hours to case).

5. <u>Awards in Similar Cases.</u> As discussed above, courts in the Third Circuit have approved FLSA collective and class action settlements providing for fee awards of 20-45%. *See Mabry*, No. CV 14-5525, 2015 WL 5025810, at *4; *Acevedo*, No. CV 3:13-2529, 2017 WL 4354809, at *18. And as shown in the table above, courts have consistently approved percentages above 30% in cases involving settlement funds much like the fund to be established here. *See, e.g.*, *Rouse*, No. CIV.A. 14-1115, 2015 WL 1725721(35% of $453,900.00 settlement); *Devlin*, No. CV 15-4976, 2016 WL 7178338 (33.3% of $1.55 million settlement); *Erie Cty. Retirees Ass'n*, 192 F. Supp. 2d 369 (38% of $350,000.00 settlement); *In re Valuevision Int'l Inc.*, 957 F. Supp. 699 (34.27% of $926,136.99 settlement). Thus, the Court's review of awards in similar cases suggests that the fee award negotiated by the parties is reasonable.

6. <u>Value of Benefits Attributable to Class Counsel Relative to Other Groups.</u> All benefits obtained by Plaintiffs through the proposed settlement can be attributed to the efforts of counsel, rather than to government agencies or other groups. Most notably, "[t]here is no

indication that the [Department of Labor] was investigating the defendant's overtime compensation practices[.]" *Acevedo*, No. CV 3:13-2529, 2017 WL 4354809, at *19. As a result, "there is nothing to compare," *Id.*, and this factor favors approval.

       7.      <u>Percentage Fee if Subject to Private Fee Arrangement.</u> In private contingency fee cases, "plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery." *In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *see Craig*, No. 4:08-CV-2317, 2013 WL 84928, at *12 ("In this region, '[a]ttorneys regularly contract for contingent fees between 30% and 40% with their clients in non-class, commercial litigation' and thus we have no trouble finding that an award of thirty-two percent (32%) less expenses, which falls at the low end of that range, is consistent with market rates."). A percentage fee of 35% falls right in the middle of this range, and so this factor favors approval.

       8.      <u>Any Innovative Terms of Settlement.</u> The Court has reviewed the parties' proposed settlement agreement, and has identified no unusual or "innovative" terms requiring further analysis. As a result, this factor favors approval.

       9.      <u>Results of a Lodestar Cross-Check.</u> Finally, the Third Circuit has "suggested it is 'sensible' for district courts to 'cross-check' the percentage fee award against the 'lodestar' method." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005); *see Brumley,* No. CIV.A. 08-1798 JLL, 2012 WL 1019337; *In re Chickie's & Pete's,* No. CIV.A. 12-6820, 2014 WL 911718, at *4 ("In FLSA cases, both the 'lodestar' formula and the percentage-of-recovery method have been used in evaluating the reasonableness of attorneys' fees.").

When conducting a "lodestar" analysis, the Court first calculates a "lodestar" by "multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." *In re Rite Aid Corp.*, 396 F.3d at 305. Then, the Court must "multiply the lodestar calculation to reflect the risks of nonrecovery, to reward an extraordinary result, or to encourage counsel to undertake socially useful litigation." *Rouse*, No. CIV.A. 14-1115, 2015 WL 1725721, at *14. Finally, the result is compared to the proposed percentage fee award to confirm the reasonableness of that award. "Multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied." *In re Prudential Ins. Co.*, 148 F.3d at 341.

Yet "in determining the lodestar for cross-check purposes, the Court need not engage in a full-blown lodestar inquiry with 'mathematical precision.'" *Rouse*, No. CIV.A. 14-1115, 2015 WL 1725721, at *14; *see In re Rite Aid Corp.*, 396 F.3d at 305 (explaining that, when performing a "cross-check" of a percentage fee award, an "abridged lodestar analysis" is appropriate); *Milliron v. T-Mobile USA, Inc.*, 423 F. App'x 131, 136 (3d Cir. 2011) ("[T]he crosscheck is not the primary analysis in this type of case and does not entail 'mathematical precision [ ]or bean-counting.'"). Instead, the Court "should be satisfied with a summary of the hours expended by all counsel at various stages with less detailed breakdown than would be required" to perform a full lodestar analysis. *In re Rite Aid Corp*, 396 F.3d at 307 n. 16 (quoting *Report of the Third Circuit Task Force, Selection of Class Counsel*, 208 F.R.D. 340, 423 (2002)).

Moreover, the Court "does not have to 'review actual billing records' but can 'rel[y] on summaries submitted by the attorneys.'" *Young v. Tri Cty. Sec. Agency, Inc.*, No. CIV.A. 13-5971, 2014 WL 1806881, at *10 (E.D. Pa. May 7, 2014). That said, "[e]ven when used as a cross-check, courts should 'explain how the application of a multiplier is justified by the facts of a particular case.'" *In re Rite Aid Corp.*, 396 F.3d at 306.

To perform the cross-check, "district courts should apply blended billing rates that approximate the fee structure of all the attorneys who worked on the matter." *Id.* Plaintiffs' counsel has provided a supplemental declaration listing the attorneys and staff who billed time here, along with each team member's position, years of experience, hourly rate, and total hours billed. [ECF 52 at ¶ 8]. Counsel represents that Plaintiffs' attorneys and support staff have billed (i) 93.5 hours at $650.00 per hour ($60,775.00); (ii) 7 hours at $500.00 per hour ($3,500.00); (ii) 45 hours at $450.00 per hour ($20,250.00); (iii) 136 hours at $400.00 per hour ($54,500.00); (iv) 11 hours at $125.00 per hour ($1,375.00); and (v) 8 hours at $140.00 ($1,120.00). [*Id.* at ¶ 8]. Combining these amounts generates a total "lodestar" of $141,520.00.

Counsel then "conservatively estimate[s]" that his firm will spend another 20 hours—10 hours at an hourly rate of $650.00 and 10 hours at an hourly rate of $400.00—overseeing the distribution of funds, answering class member questions, and closing this matter. [*Id.* at ¶ 10]. This estimate, which the Court finds to be reasonable, adds another $10,500.00 to the lodestar amount, for a grand total of $152,020.00.

Comparing this lodestar to the requested fee award of $386,750.00 leads to a multiplier of 2.54.[4] This number is "well within the [1.0 to 4.0] range frequently awarded in common fund cases in this Circuit." *Rouse*, No. CIV.A. 14-1115, 2015 WL 1725721, at *14; *In re Ikon Office Sols., Inc.*, 194 F.R.D. at 195 ("A multiplier of 2.7 is well within the range of those awarded in similar cases[.]").

The Court also finds that a multiplier of 2.54 is supportable, when used as a cross-check.[5] This is so because of the risk undertaken by Plaintiffs' counsel handling this matter on a contingent basis, the substantial attorney time and resources expended litigating the case and negotiating a settlement, the positive result obtained for the prospective class, and the public interests advanced by FLSA litigation. *See J/H Real Estate Inc. v. Abramson*, 951 F. Supp. 63, 65 (E.D. Pa. 1996) (describing a fee award "over 2½ times the lodestar" as a "generous but fair premium."); *Rouse*, No. CIV.A. 14-1115, 2015 WL 1725721 at *13 (approving multiplier of 2.08 where counsel had devoted 221.45 hours to FLSA case that settled for $453,900).

---

[4] In his supplemental declaration, counsel calculates the applicable multiplier as 2.73, rather than 2.54. [ECF 52 at ¶ 12]. It is unclear how counsel derived that multiplier; regardless, the Court would reach the same result even if 2.73 were the appropriate number.

[5] To be clear, because the lodestar is being used here as a cross-check, the requirements for precision (including with respect to any multiplier) are less stringent.

The Court's review of multipliers approved in common fund cases with roughly comparable "lodestar" amounts supports that conclusion. *See In re Rite Aid*, 396 F.3d at 307 ("Consideration of multipliers used in comparable cases may be appropriate."); *see, e.g.*:

| Cases | Multiplier | Lodestar |
|---|---|---|
| *Rouse v. Comcast Corp.,* No. CIV.A. 14-1115, 2015 WL 1725721 (E.D. Pa. Apr. 15, 2015) | 2.08 | $76,298.82 |
| *Schaub v. Chesapeake & Delaware Brewing Holdings,* No. CV 16-756, 2016 WL 9776070 (E.D. Pa. Nov. 14, 2016) | 2.37 | $129,245.00 |
| *Cikra v. LaMi Prod., LLC,* No. 2:15-CV-06166-WB, 2016 WL 9776077 (E.D. Pa. Nov. 10, 2016) | 2.16 | $207,176.85 |
| *Devlin v. Ferrandino & Son, Inc.,* No. CV 15-4976, 2016 WL 7178338 (E.D. Pa. Dec. 9, 2016) | 2.32 | $222,187.30 |
| *Arrington v. Optimum Healthcare IT, LLC,* No. CV 17-3950, 2018 WL 5631625 (E.D. Pa. Oct. 31, 2018) | 5.30 | $307,189.50 |
| *Keller v. TD Bank, N.A.,* No. CIV.A. 12-5054, 2014 WL 5591033 (E.D. Pa. Nov. 4, 2014) | 3.26 | $368,601.50 |
| *In re Safety Components, Inc. Sec. Litig.,* 166 F. Supp. 2d 72 (D.N.J. 2001) | 2.81 | $533,672.00 |

Thus, a "lodestar cross-check" confirms that the proposed 35% fee award is fair and reasonable under the circumstances. For this and all of the other reasons discussed above, the Court will approve the requested fee award.

### D. Costs

The proposed settlement agreement also provides for "the payment of out-of-pocket costs incurred by Class Counsel not to exceed $20,000.00." As of October 11, 2019, counsel has reportedly incurred costs of $6,727.70. [ECF 52]. These costs include "filing fees, travel for hearings, mediation, client meetings, and Westlaw." [ECF 50 at p. 14].

"[C]ounsel in common fund cases is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the case." *In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 226 (E.D. Pa. 2014); *see, e.g. Yong Soon Oh v. AT & T Corp.*, 225 F.R.D. 142, 154 (D.N.J. 2004) (approving reimbursement of costs including (1) "travel and lodging," (2) "local meetings and transportation," (3) "depositions," (4) "photocopies," (5) "messengers and express services," (6) "telephone and fax," (7) "Lexis/Westlaw legal research," (8) "filing, court and witness fees," (9) "overtime and temp work," (10) "postage," and (11) "the cost of hiring a mediator").

The Court finds that the reported costs are reasonable given the hours worked by counsel to-date, and that the proposed agreement appropriately limits counsel's recovery to actual costs incurred. Counsel has maintained, and offered to allow the Court to inspect, documentation reflecting these costs. [ECF 50-2 at ¶ 31]. The Court finds inspection of the actual billing records unnecessary given counsel's duty of candor, the modest amount of costs claimed, and the description of those costs that counsel has provided to the Court.

As a result, the Court is satisfied that the reported costs are "adequately documented and reasonably and appropriately incurred." *In re CertainTeed*, 303 F.R.D. at 226. The Court will therefore approve reimbursement of those costs.

### E. Service Payments

Finally, the proposed settlement agreement authorizes $5,000.00 "service" or "enhancement" payments to named plaintiffs Chad Kapolka and Brett Turrentine. [ECF 50-1 at ¶¶ 16(a)-(b)].

"Courts have ample authority to award incentive or 'service' payments to particular class members where the individual provided a benefit to the class or incurred risks during the course of litigation." *Bredbenner*, No. CIV.A. 09-1248 MF, 2011 WL 1344745, at *23. Such awards "reward the public service of contributing to the enforcement of mandatory laws." *Devlin*, No. CV 15-4976, 2016 WL 7178338, at *11 (internal quotation marks omitted).

Here, the $5,000.00 service payments to Mr. Kapolka and Mr. Turrentine are "consistent [with], if not lower, than awards regularly provided" in other common fund cases. *Bredbenner*, No. CIV.A. 09-1248 MF, 2011 WL 1344745, at *23; *see, e.g.*:

| Case Caption | Incentive Payment |
|---|---|
| *Devlin v. Ferrandino & Son, Inc.,* No. CV 15-4976, 2016 WL 7178338 (E.D. Pa. Dec. 9, 2016) | $7,500.00 |
| *Schaub v. Chesapeake & Delaware Brewing Holdings,* No. CV 16-756, 2016 WL 9776070 (E.D. Pa. Nov. 14, 2016) | $9,000.00 |
| *Cikra v. LaMi Prod., LLC*, No. 2:15-CV-06166-WB, 2016 WL 9776077 (E.D. Pa. Nov. 10, 2016) | $2,500.00 and $12,500.00 |
| *Bredbenner v. Liberty Travel, Inc.*, No. CIV.A. 09-1248 MF, 2011 WL 1344745 (D.N.J. Apr. 8, 2011) | $10,000.00 |
| *In re Elec. Carbon Prod. Antitrust Litig.*, 447 F. Supp. 2d 389 (D.N.J. 2006) | $6,000.00 and $12,000.00 |
| *In re Am. Inv'rs Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 263 F.R.D. 226 (E.D. Pa. 2009) | $5,000.00 and $10,500.00 |

The Court finds that the proposed service payments to Mr. Kapolka and Mr. Turrentine are reasonable and appropriate, given their efforts in bringing this case and the risks attendant to participating in public interest litigation as a named plaintiff. *See Frank v. Eastman Kodak, Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) ("In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers ."). As a result, the Court will approve those payments as well.

### II. <u>Conclusion</u>

For all the reasons discussed above, the parties' settlement, including its provisions on attorneys' fees, costs, and service awards, is a fair and reasonable resolution of a bona fide dispute under the FLSA. The Court therefore approves the proposed agreement in its entirety.

A corresponding order follows.

DATED: October 22, 2019        BY THE COURT:

/s/ *J. Nicholas Ranjan*
United States District Judge